**BAYER AG AND MILES, INC., Plaintiffs,**

v.

**BARR LABORATORIES, INC., Defendant.**

No. 92 Civ. 0381 (WK) (AJP).

United States District Court, S.D. New York.

June 5, 1995.

---

**458**

Milton Sherman, Gerald Sobel, Richard Greco, Kaye Scholer Fierman Hays & Handler, New York City, for plaintiff.

Myron Cohen, Thomas C. Pontani, Cohen Pontani Lieberman & Pavane, New York City, Bruce Genderson, Glen J. Pfadenhauer, Williams & Connolly, Washington, DC, for defendant.

## OPINION & ORDER

PECK, United States Magistrate Judge:

Plaintiffs Bayer AG and Miles, Inc. (hereafter, "Bayer"), the owners of a patent for an antibacterial agent known as "ciprofloxacin," sued Barr Laboratories, Inc. for patent infringement as a result of Barr's application to the Food and Drug Administration for approval of a drug containing the same ingredients as ciprofloxacin. In May 1992, shortly after this suit began, the parties entered into, and the Court approved, a stipulated confidentiality/protective order limiting access to "confidential" discovery information to outside counsel and independent experts. Barr now moves to modify that stipulated Protective Order to allow its in-house counsel to attend depositions of Bayer's witnesses and experts.

■ The Second Circuit has not addressed the issue of what legal standard applies to a party (as opposed to an intervening non-party) seeking to modify a previously stipulated protective order for private (as opposed to "public interest") reasons. The Court holds that, in deciding whether to modify a protective order upon a party's request for non-public interest reasons, the Court must balance the following factors: (1) good cause, (2) the nature of the protective order, (3) foreseeability of the requested modification, and (4) reliance on the protective order.

For the reasons set forth below, the Court denies Barr's motion because Barr has not met its burden of showing "good cause" to modify the stipulated Protective Order.

### FACTS

#### The Stipulated Protective Order and its Negotiation

Bayer commenced this patent infringement action on January 16, 1992. In May 1992, the parties stipulated to, and the Court approved, a Protective Order so as to "preserve the legitimate business interests of the parties" by "prevent[ing] unnecessary dissemination or disclosure of such confidential information." (Protective Order at p. 1.)

The Protective Order allows each party to designate "information that the designating party believes constitutes ... trade secrets, processes, operations, research, technical or developmental information ... or other proprietary data or information of commercial value" as "Confidential" information subject to protection. (Protective Order, ¶ 1.) The Protective Order further provides that "confidential" information can be used "solely for the purposes of this litigation and not for any business or competitive purposes," and must be destroyed or returned at the conclusion of the action. (Id., ¶¶ 6, 11.) These provisions are typical in confidentiality agreements and orders, particularly in cases between business competitors where parties must have access through discovery to trade secrets and similar commercially-sensitive information in order to develop their cases.

Most importantly for purposes of this motion, the Protective Order limits access to confidential information to outside counsel, independent consultants or experts, and the Court. (Protective Order, ¶ 5.)

The parties agree that during the negotiation of the Protective Order, there was no explicit discussion as to whether in-house counsel should have access to confidential information. Barr's counsel alleges that the parties never addressed the specific issue of in-house access because neither side request-

ed such access.[1] Bayer's counsel, on the other hand, has stated that his intent was to restrict in-house counsel from having access to confidential information.[2]

At the time the Protective Order was negotiated in May 1992, Barr employed attorney Paul M. Bisaro (who was a member of the law firm of Winston & Strawn) as "acting General Counsel," and the Protective Order did not give Mr. Bisaro access to confidential information. (Affidavit of Kara L. Flanery, in-house counsel for Barr ["Flanery Aff."], ¶ 3.) In July 1992, Barr hired Mr. Bisaro as in-house General Counsel. (*Id.*) In February 1994, Barr hired Kara L. Flanery as Associate Counsel and assigned to her the task of monitoring Barr's litigation, including this case. (*Id.*) In the spring of 1994, Barr hired Williams & Connolly as additional outside counsel for this case. (*See* Greco Aff. ¶ 10.)

### Barr's Motion to Modify the Protective Order

On February 27, 1995, Barr sought to have Ms. Flanery present at the deposition of an inventor of the Bayer patent at issue. (Barr Brief at 3.) Bayer objected on the ground that Ms. Flanery was not authorized to view confidential information. (*Id.*) The parties conferred with Magistrate Judge Roberts, who advised the parties that, in the absence of agreement, Ms. Flanery's presence would require modification of the Protective Order, which Barr should seek by formal motion. (*Id.*)

Barr now seeks a modification of the Protective Order to allow Ms. Flanery to be present at depositions, and to review documents used at depositions. Barr asserts that Ms. Flanery must be permitted to "evaluate the testimony and demeanor" of key witnesses, consult with outside counsel regarding strategy, and "make informed decisions regarding the progress of the litigation." (Barr Brief at 1, 3; Barr Reply Brief at 1 n. 1.) Ms. Flanery has stated that she will comply with all provisions of the Protective Order and will not take possession of confidential documents. (Barr Reply Brief at 1, n. 1.) She also agrees to leave the deposition, upon Bayer's request, "for any portion of the questioning which counsel for Bayer asserts is reasonably likely to illicit [sic] information which is proprietary, currently non-public and of commercial value to Bayer." (*Id.;* Flanery Aff. ¶ 6.)

Bayer opposes Barr's motion on the ground that Barr cannot show "compelling need" or "extraordinary circumstances" to justify modification of the Protective Order. Bayer asserts that Barr's hiring of inside counsel was foreseeable when the stipulated Protective Order was negotiated. (Bayer Brief at 2.) Bayer claims that in reliance on the Protective Order, "[i]n order to expedite the case, [Bayer] made only limited objections to the relevance and burden of [Barr's discovery] requests," producing "over six million pages of documents." (Greco Aff. ¶ 7.) Bayer further alleges that Barr's discovery requests "covered nearly all proprietary aspects of an entire research program of which Bayer is a world leader"—research materials that Bayer maintains in the course of its business "under strict confidence." (*Id.* ¶ 5.)

---

1. Barr's outside counsel who negotiated the Protective Order stated:

 It was agreed that existing employees of plaintiffs and defendant would not be permitted to review "Confidential Information." Plaintiffs [Bayer] never requested that their in-house attorneys be permitted to have access to information covered by the Protective Order and Barr did not have any such attorneys at the time the Order was entered.

 (Affidavit of Thomas C. Pontani ["Pontani Aff."], ¶ 4.)

2. The lawyer for Bayer who negotiated the Protective Order explained his drafting as follows:

 From the outset, [Bayer's] proposed protective order limited disclosure of confidential materials to outside counsel and experts only, deliberately excluding inside counsel and employees of parties, and provided that all deposition transcripts shall be treated as confidential. This was a specific choice. Even though my draft order denied Bayer inside counsel access to Barr's material, the importance of protecting the vast amount of research that Bayer was asked to disclose made this limitation on disclosure an essential part of the order. Barr apparently agreed with the mutual restriction and never objected to it.

 (Affidavit of Richard G. Greco, Bayer's outside counsel who negotiated the Protective Order ["Greco Aff."], ¶ 6.)

Bayer explained the need for confidentiality of this material:

> Numerous other companies have entered the quinolone antibacterial field on the heels of Bayer's great success, and Bayer was concerned that the years of accumulated research would be of enormous competitive value. Bayer's concern was particularly great here because Barr is a generic company whose business is to copy other companies' products and it is affiliated with companies headquartered in other countries in the same business.

(Greco Aff. ¶ 5.)

As an alternative to Ms. Flanery's presence at the deposition, Bayer offers to provide Ms. Flanery with the non-confidential portions of deposition transcripts and videotapes (all the depositions are being videotaped). (Bayer Brief at 6 & n. 3.)[3] Bayer claims that its "compromise is consistent with the protective order and would allow Barr's in-house counsel to do her job while insuring that Bayer's confidential information remains protected." (Bayer Brief at 6.) As discussed below, the Court agrees.

### ANALYSIS

The Court emphasizes that this is a motion to modify a stipulated protective order, and the Court is deciding it in that context. The issue of whether, in the absence of a prior stipulated protective order, a court should allow in-house counsel access to confidential information is not before the Court on this motion. For a discussion of the decisions granting and denying such access to in-house counsel, *see generally* D. Bencivenga, "Guarding Trade Secrets: Weighing In-House Counsel's Access to Discovery," *New York Law Journal*, April 6, 1995.

**I. The Martindell and Agent Orange Lines of Cases, Involving Non–Party Intervention to Modify a Protective Order for "Public Interest" Reasons, Are Not Applicable to a Party's Motion to Modify a Stipulated Protective Order for Private Reasons**

 The parties agree, and the case law is clear, that the Court has discretion to modify a protective order. *E.g., In re "Agent Orange" Product Liability Litigation,* 821 F.2d 139, 147 (2d Cir.), *cert. denied,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987). The issue here is who has the burden on such a motion.

The Second Circuit has not addressed the issue of what legal standard applies to a party seeking to modify a previously stipulated protective order for private as opposed to "public interest" reasons. The Second Circuit has addressed the issue of modification of a protective order when requested by non-parties, particularly the Government and the press, and for "public interest" reasons; those cases, however, involve different policy considerations.

The Second Circuit decisions on the issue of modification of a protective order can be roughly grouped into two categories (although some cases defy classification): (1) intervention by a non-party governmental entity seeking to modify a protective order; and (2) intervention by non-parties (or a party's application on their behalf) seeking to modify a protective order in order to gain access to matters of "public interest." This case, involving a motion by a party to modify a protective order for purely private reasons, does not fall within either category.

**A. The Martindell Standard Requiring the Movant to Show "Compelling Need" Applies to Cases of Governmental Intervention**

The leading Second Circuit case establishing the standard for modification of a protective order in the context of non-party governmental intervention is *Martindell v. International Tel. & Tel. Corp.,* 594 F.2d 291 (2d Cir.1979). *Martindell* involved a stockholder derivative action on behalf of International Telephone and Telegraph Corporation ("ITT") against certain ITT officers and directors, for waste of corporate assets through payments made to influence Chilean

---

**3.** The Protective Order provides for a 20–day period after receipt of the deposition transcript for the designating party to review the transcript and designate "the specific pages and lines of the transcript which contain Confidential Information." (Protective Order ¶ 7.)

elections. *Id.* at 292–93. The parties agreed to a court-approved confidentiality agreement covering deposition transcripts. *Id.* at 293. The United States, although not a party to the suit, later asked the district court for access to the deposition transcripts to further its investigation into possible violations of federal law. *Id.*

The Second Circuit employed a balancing test. On the one side of the ledger, the Court considered "the public interest in obtaining all relevant evidence required for law enforcement purposes." *Id.* at 296. On the other side, the Second Circuit weighed the "significant counterbalancing factor" of the "vital function of a protective order ... to 'secure the just, speedy, and inexpensive determination' of civil disputes, Rule 1, F.R.Civ. P., by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice." *Id.* at 295. In reaching its balancing decision, the Second Circuit emphasized the government's "awesome powers" as investigator "which render unnecessary its exploitation of the fruits of private litigation." *Id.* at 296. Accordingly, the Second Circuit held that a protective order should not be vacated or modified at the government's request "absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need." *Id.*

In *Palmieri v. New York*, 779 F.2d 861, 866 (2d Cir.1985), the Second Circuit, applying the *Martindell* test, held that, in the absence of a showing of compelling need or extraordinary circumstances, the New York State Attorney General could not modify two protective orders in order to allow a grand jury access to a settlement agreement. The Court emphasized that it was the nature of the government's investigatory powers that triggered the stricter standard set forth in *Martindell.* *Id.*[4]

Bayer erroneously relies on the *Martindell* standard in arguing that Barr must show "extraordinary circumstances" or "compelling need" to justify modification of the Protective Order. The higher *Martindell* standard is clearly premised on the government's "awesome powers of investigation." *See In re Application of Akron Beacon Journal*, 94 Civ. 1402, 1995 WL 234710 at *14 (S.D.N.Y. April 20, 1995). The instant motion does not involve a governmental entity. The interests involved here are solely those of two private litigants. Thus, the *Martindell* "compelling need" standard is not applicable.

**B. *The Agent Orange Standard Requiring the Party Seeking Continued Confidentiality Protection to Show "Good Cause" Applies to Cases of Non–Party Intervention to Obtain Access to Information of Public Interest***

The standard for modification of a protective order by a non-party seeking to obtain access to information of public interest is set forth in *In re "Agent Orange" Product Liability Litig.*, 104 F.R.D. 559 (E.D.N.Y.1985), *aff'd*, 821 F.2d 139 (2d Cir.1987).

After a settlement was reached in the "Agent Orange" product liability litigation, the Vietnam Veterans of America sought to lift the protective orders covering discovery material. 104 F.R.D. at 562, 564–65.[5] The district court declined to apply the *Martindell* "compelling need" test. *Id.* at 569–70.

---

4. *See also, e.g., In re Grand Jury Subpoena Duces Tecum*, 945 F.2d 1221, 1224 (2d Cir.1991) (burden is on government to satisfy *Martindell* test in order to enforce a grand jury subpoena for documents protected by a confidentiality order in a bankruptcy proceeding); *Minpeco S.A. v. Conticommodity Serv., Inc.* 832 F.2d 739, 742–43 (2d Cir.1987) (applying *Martindell* to hold that the Commodity Futures Trading Commission was required to show "compelling need" to justify modification of protective order in related civil suit); *GAF Corp. v. Eastman Kodak Co.*, 415 F.Supp. 129, 132 (S.D.N.Y.1976) (denying party's request to disclose confidential documents to government; "[t]he Government as investigator has awesome powers.").

5. The Court noted that while disclosure was being sought by the representatives of class members who thus could be considered parties, they were seeking it "for the public at large, the media ... and the Congress." 104 F.R.D. at 566 n. 5. *Agent Orange* is viewed by the courts as dealing with application by a non-party. *See, e.g., Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, 501 (S.D.Iowa 1992).

Instead, the Court held that, since the case was "of great interest to the public and the media," the First Amendment "tips the balance in favor of not shifting the burden" to the party seeking to modify the protective order. *Id.* at 570. The Court therefore required the party seeking to maintain confidentiality to show "good cause" for continued protection. *Id.*[6]

Following the reasoning in *Agent Orange,* the Court in *In re Application of Akron Beacon Journal,* 1995 WL 234710, granted an intervening non-party newspaper's motion to modify a protective order subsequent to the settlement of the case. The newspaper was conducting an investigation into the relationship between insurance policy representatives and Ohio public officials and the possibility of conflict of interest therein. *Id.* at *2. The Court declined to apply the *Martindell* "compelling need" test, noting that subsequent Second Circuit decisions have "restricted *Martindell's* application" to cases involving governmental investigations. *Id.* at *14. Citing *Agent Orange,* the Court held the "[t]he burden continues to rest with [the party seeking to maintain confidentiality] to show that the Protective Order had been based and continues to be based on good cause." *Id.*[7]

**6.** Moreover, because one of the orders protected all discovery material, without any party review to determine if the documents contained "confidential" information, the Court held that no "good cause" finding was initially made justifying a protective order under Rule 26(c). 104 F.R.D. at 570–72. The Court did, however, allow the defendants to designate specific commercially-sensitive documents for continued protection. *Id.* at 575.

On appeal, the Second Circuit declined to decide whether the *Martindell* standard applied, holding that even if it applied, "extraordinary circumstances" existed because of the broad scope of the initial protective orders, the lack of justifiable reliance on the orders which stated that they were temporary and for the pretrial stages of the litigation only, and the absence of an initial "good cause" showing required by Rule 26(c). 821 F.2d at 147–48. The Second Circuit found that any inconvenience to the defendants "certainly is outweighed by the enormous public interest in the Agent Orange litigation." *Id.* at 148.

**7.** *See also, e.g., Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 791 (1st Cir.1988) (allowing

Applying the reasoning of *Agent Orange* and its progeny, Barr contends that the burden is on Bayer to show "good cause" for the retention of the no in-house counsel access provision of the Protective Order. (*See* Barr Reply Brief at 5, 9–11.)[8] The *Agent Orange* line, however, involves matters of public interest, where it is reasonable to put the burden on the party wishing to keep such information confidential. Clearly, there is no "public interest" implication in Barr's request that its in-house counsel be present at depositions. Thus, the *Agent Orange* line of cases is inapplicable.

## II. *The Standards Applicable to a Party Seeking Modification of a Protective Order for Private Reasons*

The Second Circuit has not addressed the standard applicable to a party seeking modification of a stipulated protective order for private reasons. The Court holds that the following factors should be weighed where a party seeks to modify a protective order for private reasons:

(1) good cause—if good cause was shown for the original protective order, the burden is on the party seeking modification to show good cause for modification; if good cause was not shown for the original protective order, the burden of showing

public interest group access to documents involving public interest on showing less than compelling need; "[o]utside the area of government intervention, courts have applied much more lenient standards for modification."), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *Westchester Radiological Ass'n P.C. v. Blue Cross/Blue Shield of Greater New York, Inc.,* 138 F.R.D. 33, 36–38 (S.D.N.Y.1991) (applying *Agent Orange* rationale to allow defendant in settled action to disclose discovery material to the Health Care Financing Administration, because of the public interest in preventing Medicare fraud or abuse).

**8.** In a footnote, however, Barr claims that the Court need not decide who has the burden on this motion, "because regardless of whether Bayer has the burden of showing good cause to preclude Ms. Flanery from attending the deposition, or Barr has the burden of demonstrating good cause to permit it, the record clearly demonstrates that the motion [to modify the protective order] should be granted." (Barr Reply Brief at 5 n. 4.)

good cause is on the party seeking continued confidentiality protection;

(2) the nature of the protective order (*i.e.*, narrow vs. broad, court imposed vs. court approved upon stipulation of the parties);

(3) the foreseeability at the time of the original protective order of the modification now requested; and

(4) the parties' reliance on the protective order.

In establishing these standards, the Court has obtained guidance from two district court decisions, *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 106 F.R.D. 551 (S.D.N.Y.1985), and *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499 (S.D.Iowa 1992). In *Hayden*, plaintiffs in an ongoing antitrust action sought to modify a protective order to allow third party access to documents received from the defendants.[9] 106 F.R.D. at 552. Noting that the law in this area is chaotic, the Court held that a "useful approach tacitly adopted by a number of courts" is to examine the "nature of the protective order, the status of the party for whom modification is sought, the degree to which the protected party relied on the order, and the government's role in the dispute." *Id.* at 554. *Hayden* broke down the analysis into four factors: "1. Good Cause"; "2. Reliance"; "3. The Pendency of Other Litigation"; and "4. The Government as a Party." 106 F.R.D. at 554–56.[10]

In *Jochims v. Isuzu Motors, Ltd.*, two years after the parties had agreed on a protective order, the plaintiff sought to modify it to allow plaintiff to provide material to others with lawsuits against Isuzu. 145 F.R.D. at 499–500. The Court held that "where a party to [a] stipulated protective order seeks to modify that protective order, that party must demonstrate particular good cause in order to gain relief from the agreed to protective order." *Id.* at 501. In so finding, the Court considered the producing party's reliance on the stipulated protective order as well as the foreseeability of the requested modification at the time the parties entered into the stipulated protective order. *Id.* at 501–02.

## A. *GOOD CAUSE: If Good Cause Was Shown for the Original Protective Order, the Burden is on the Party Seeking Modification to Show Good Cause for Modification*

■ Rule 26(c) of the Federal Rules of Civil Procedure provides that a protective order may be entered only upon a showing of "good cause" by the party seeking the protection. Rule 26(c) is silent as to which party has the burden of showing good cause on a motion to modify a protective order—the party seeking to modify the protective order or the party seeking to keep the protective order in force.

The Court agrees with *Hayden v. Siemens* that:

> [W]hen a party to a litigation seeks to modify a protective order, courts have determined which party bears the burden of showing the need for modification by analyzing "the nature of the protective order, the status of the party for whom modification is sought, [and] the degree to which the protected party relied on the order."
>
> *Id.* at *4 (quoting *Hayden*).

**9.** The *Hayden* plaintiffs sought to modify the protective order to provide the information to the New York and Texas Attorneys General. Although a governmental interest thus was implicated, the fact that the Court did not simply apply *Martindell's* "compelling need" standard indicates that the Court considered the primary question to be what standard applies when a party seeks to modify a protective order.

This view of *Hayden* is corroborated by *Pellegrino v. United States*, 89 Civ. 8406, 1992 WL 84475 (S.D.N.Y. April 15, 1992), which applied the *Hayden* test to a wrongful death suit under the Federal Tort Claims Act. In *Pellegrino*, the issue was whether plaintiffs could modify a stipulated protective order which limited use of an audiotape for litigation purposes, presumably to release such information to the media. *Id.* at *2. The Court denied the motion, applying the *Hayden* standard:

**10.** The third and fourth *Hayden* factors have no relevance to the present motion. Barr does not seek to modify the protective order to make information available to litigants in related actions; Barr seeks only to allow its own in-house counsel to have access. The government is not involved in this motion. Thus, neither of those factors need be weighed in the balance or discussed further here, although they would be relevant factors in appropriate cases.

If good cause was not shown when a protective order was initially issued, then the party seeking to maintain the order should bear the burden of establishing the need for continued protection. However, *if the protective order was supported by a showing of good cause, the burden should be on the party seeking modification.*

106 F.R.D. at 554 (emphasis added). *Accord, Jochims v. Isuzu,* 145 F.R.D. at 501 ("where a party to [a] stipulated protective order seeks to modify that order, that party must demonstrate particular good cause in order to gain relief from the agreed to protective order.").

### 1. *Good Cause Existed for the Original Protective Order*

■ The Court therefore must first determine whether "good cause" existed for the original stipulated Protective Order.

The Protective Order at issue here clearly was justified in light of the nature of this case. This patent dispute involves two direct competitors. (Greco Aff. ¶ 5.) Barr's discovery requests "covered nearly all proprietary aspects of an entire Bayer research program," material that Bayer keeps "under strict confidence" in its business. (*Id.*) Clearly, given the commercially-sensitive nature of the information to be exchanged in discovery, there was "good cause" for entry of a protective order and "good cause" for preventing party personnel from having access to confidential information.[11] The parties implicitly acknowledged this by stipulating to the Protective Order. Thus, the Court now finds (as the district court apparently did when it originally approved the stipulated Protective Order) that good cause existed to justify the original Protective Order.

### 2. *Barr Has Not Shown "Good Cause" to Modify the Protective Order*

■ Since the Court has found that there was "good cause" for the original Protective Order, the burden is on Barr to make a

"good cause" showing that modification is necessary. In determining whether Barr has shown good cause to modify the Protective Order, the Court weighs Barr's need for the modification against Bayer's need for protection, factoring in the availability of alternatives to better achieve both parties' goals. *See Viskase Corp. v. W.R. Grace & Co.,* 90–C–7515, 1992 WL 13679 at *5, 1992 U.S.Dist. LEXIS 619 at *15 (N.D.Ill. Jan. 23, 1992) (court considers alternative to modification of protective order in denying modification motion).

Barr maintains that Ms. Flanery must be present at depositions so that she may "evaluate the testimony and demeanor" of key witnesses, and "consult with outside counsel regarding strategy." (Barr Brief at 3). Barr contends that without the presence of in-house counsel to monitor the progress and strategy of the litigation, its "right to control its own defense is being severely hampered." (*Id.* at 5).

Barr has proposed that Ms. Flanery will leave the deposition room when any questions potentially call for confidential Bayer information. The very process of having Ms. Flanery exit and re-enter the depositions on a frequent basis would be disruptive and would prolong the depositions. The depositions of many of Bayer's witnesses are being conducted in German using translators. To require Bayer to ascertain before the witness answers Barr's question whether the answer will disclose confidential information is too great a burden to place on Bayer.

Moreover, Bayer has proposed a viable alternative to Ms. Flanery's presence. Pursuant to the terms of the Protective Order, within 20 days of receiving a deposition transcript, Bayer agrees to review the transcript and provide the non-confidential portions to Ms. Flanery. Barr does not contend that Ms. Flanery has technical expertise or that her presence otherwise is necessary for Barr's taking of the depositions.[12] Barr de-

---

11. To the extent that Barr argues that there was not "good cause" here because of the "blanket" nature of the stipulated Protective Order, *see* discussion in Point II.B, below.

12. Barr is represented by two outside law firms, including Williams & Connolly. Barr does not

contend that those two firms are unable to adequately represent Barr at the depositions. The Court notes that Williams & Connolly has proclaimed that its lawyers are not "potted plants" in witness examinations. *See* Congressional Iran–Contra Hearings.

sires Ms. Flanery to be present so that she can evaluate the "testimony and demeanor" of key witnesses. The Court recognizes that there is a difference between reading a printed transcript and seeing the deponent. Here, however, all the depositions are being videotaped, so Ms. Flanery can assess witness demeanor by viewing the videotapes.[13] The availability of the videotape testimony is a key factor in the Court's balance of Barr's need for modification of the Protective Order against Bayer's need for protection.

Thus, Bayer's proposed alternative clearly provides an adequate opportunity for Ms. Flanery to ascertain witnesses' credibility without exposing confidential information to a competitor's employee. Barr has not demonstrated "good cause" for its proposed modification of the stipulated Protective Order in light of Bayer's proposed alternative allowing in-house counsel access to the non-confidential portions of the deposition videotapes. Moreover, as discussed below, the other factors also weigh against Barr's modification request.

**B.** *The Nature of the Protective Order*

Another factor to consider is the nature of the protective order—that is, its scope and whether it was court imposed or stipulated to by the parties.

As to scope, there are essentially three types of protective orders in terms of the amount of information covered. The narrowest is a protective order covering specific, identified information. *See, e.g., Pellegrino v. United States*, 1992 WL 84475 at *3 (protective order covering single, specified audiotape). With a narrow protective order the court usually reviews the protected material, so it is clear that "good cause" existed for the protective order.

■ At the other extreme is an "umbrella" protective order that designates all discovery as protected, without any review or determination of "good cause" by the parties or court. "Umbrella" protective orders are disfavored, and on a motion for modification, the burden generally will be on the party seeking protection to show good cause. ·*See Hayden*, 106 F.R.D. at 554 (burden of establishing need for continued protection is on person opposing modification in "decisions involving 'umbrella' type orders that indiscriminately restrict access to all discovered documents."); *Agent Orange*, 104 F.R.D. at 570–71 (no "good cause" for original protective order that covered all discovery material).

■ Between those two extremes is a "blanket" protective order that permits the parties to protect documents that they in good faith believe contain trade secrets or other confidential commercial information.[14] Such protective orders are routinely agreed to by the parties and approved by the courts in commercial litigation, especially in cases between direct competitors. "Blanket" protective orders are essential to the functioning of civil discovery. "Good cause" generally exists for issuance of a blanket protective order permitting competitors to designate "confidential" commercial information as protected—at least in the context of a party motion for modification of a stipulated protective order.

■ On a modification motion by a nonparty, blanket protective orders—and the parties' designation of documents as protected—may need to be more carefully examined to prevent abuse. Where, however, the modification motion is brought by a party who stipulated to a blanket protective order, the party should be held to its agreement and thus should have the burden of showing good cause for its modification request. *See Hayden*, 106 F.R.D. at 556 (finding "good cause" for issuance of "blanket" protective order where "order only restricted access to confidential business information"; party who

---

13. Moreover, since many of the witnesses will be testifying in a foreign language that Ms. Flanery does not speak, there is a reduced need for, or benefit from, viewing the live testimony.

14. While the terminology is not uniform throughout the case law, the Court follows *Hayden* in using the term "umbrella" to refer to a disfavored protective order that covers all discovery information and "blanket" to refer to a protective order that allows the parties to designate material they in good faith believe is commercially-sensitive for confidentiality protection.

agreed to such order "will not be heard to complain that the order is unjustified."); *Kamyr AB v. Kamyr, Inc.*, 91–CV–0453, 1992 WL 317529 at *8 (N.D.N.Y. Oct. 30, 1992) ("[t]he simple fact that the protective order was a 'blanket order' does not defeat this ["good cause"] finding and therefore the burden is on the proposed intervenor to show that the protective order should be modified.").

As the Court stated in upholding a "blanket" protective order similar to the one at issue here:

> Here, the stipulated ["blanket"] protective order serves the purpose enumerated in Fed.R.Civ.P. 26(c)(7). Its "purpose" or "cause" is to allow otherwise sensitive materials to be produced in the course of an antitrust/patent/unfair competition action between two direct competitors. Information filed under "seal" of the Protective Order is that information which the parties believe would have a detrimental effect on their market position should it be utilized by the competition. Indeed, a majority of the documents are produced "For Attorneys Eyes Only," thus preventing even the client from gaining access to the sensitive material. The court finds now, as it did when it reviewed and "So Ordered" the Stipulated Protective Order, that cause existed to protect the various items of discovery in this action . . ., understanding fully that, absent the order, discovery would come to a virtual standstill. . . .

> [T]he fact that the parties are vested with the right to "seal" specific documents does not defeat the initial finding of good

cause. Once the court has determined that the nature of the action is such that commercially sensitive material the Rule 26(c)(7) provision—namely, to allow the orderly and expedient process of discovery. *Kamyr AB v. Kamyr, Inc.*, 1992 WL 317529 at *5–6.

■ Another factor to consider is whether the protective order was court imposed or court approved on the parties' stipulation. A party's prior consent to the protective order will weigh against its motion for modification.[15] Barr's stipulation to the original Protective Order here thus weighs against its request for modification.[16]

### C. *Foreseeability*

■ The Court also should consider whether the need for the modification was foreseeable at the time the parties negotiated the original stipulated protective order. *Jochims v. Isuzu*, 145 F.R.D. at 502 ("Not surprisingly, a party's oversight in not negotiating a provision in a protective order concerning a matter which should have been reasonably foreseeable at the time of the agreement has been held to not constitute good cause for relief from the protective order."); *Ball v. Field*, 1992 WL 57187 at *15–16, 1992 U.S.Dist. LEXIS 3288 at *51; *Viskase v. W.R. Grace*, 1992 WL 13679 at *4, 1992 U.S.Dist. LEXIS 619 at *12.

Barr cannot show that its request for modification is justified by its hiring of Ms. Flanery, because the hiring of in-house counsel was foreseeable at the time the parties negotiated the original Protective Order. Barr had in its employ an "Acting General Coun-

---

**15.** *Ball v. Field*, 90–C–4383, 1992 WL 57187 at *15, 1992 U.S.Dist. LEXIS 3288 at *50 (N.D.Ill. Mar. 18, 1992 (burden on movant to show good cause for modification of stipulated protective order)); *Viskase v. W.R. Grace*, 1992 WL 13679 at *4–5, 1992 U.S.Dist. LEXIS 619 at *13 (same); *Richard Wolf Medical Instruments Corp. v. Dory*, 130 F.R.D. 389, 392 (N.D.Ill.1990) (" 'where a protective order is agreed to by the parties before its presentation to the court, there is a higher burden on the movant to justify the modification of the order.' ") (quoting *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 597 (7th Cir.1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979)), *aff'd*, 928 F.2d 410 (Fed.Cir.), *cert. denied*, 501 U.S. 1283, 112 S.Ct. 39, 115 L.Ed.2d 1119 (1991); *Omega Homes, Inc. v. Citicorp Ac-*

*ceptance Co.*, 656 F.Supp. 393, 404 (W.D.Va. 1987) (when "the proposed modification affects a protective order stipulated to by the parties, as opposed to one imposed by the court, it is clear that the shared and explicit assumption that discovery was for the purposes of one case alone goes a long way toward denying the movant's request without more.") (citing *GAF Corp. v. Eastman Kodak Co.*, 415 F.Supp. 129, 132 (S.D.N.Y.1976)).

**16.** Barr is free, however, to challenge Bayer's classification of a particular document as "confidential." (*See* Protective Order ¶ 16.) That is different from seeking modification of the Protective Order itself.

sel" at the time the Protective Order was negotiated, and hired the very same person as in-house General Counsel shortly thereafter. The possibility of hiring in-house counsel was clearly foreseeable when the parties negotiated the Protective Order, and Barr should have provided for that eventuality. Barr's failure to provide originally for in-house counsel's access weighs against its request for modification.

### D. *Reliance*

██ Another factor affecting the balance of interests is the "extent to which a party resisting modification relied on the protective order in affording access to discovered materials." *Hayden v. Siemens,* 106 F.R.D. at 555.

The "reliance" factor originated in *Martindell v. International Tel. & Tel. Corp.,* 594 F.2d at 295. The *Martindell* Court denied the government's attempt to obtain depositions transcripts that were subject to a protective order, noting that "[u]nless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences." *Id.*[17]

Bayer has demonstrated its reliance on the Protective Order:

> To comply with Barr's document request, over six million pages of documents were made available for inspection and copying by Barr. Much of this material went far beyond ciprofloxacin and its discovery, and related to other compounds made and research performed after the invention of ciprofloxacin. In order to expedite the case, [Bayer] made only limited objections to the relevance and burden of the re-

quests. With the agreed protective order, the need to scrutinize every scientific document delivered in the production and consult on its importance was significantly reduced. In the absence of the restriction on disclosure, [Bayer] would have taken a different position as to the broad scope of the request and the burden it imposed.

(Greco Aff. ¶ 7.) If the Court were to allow Barr to modify the Protective Order after Bayer has produced millions of documents in reliance on that Order, the Court would be sending a negative message to future litigants. Litigants and their counsel must know that they can rely on protective orders to protect sensitive commercial information from disclosure to competitors.

Bayer's reliance on the Protective Order further justifies the Court's refusal to modify the Protective Order.

### CONCLUSION

For the reasons set forth above, the Court finds that Barr has not demonstrated "good cause" to modify the stipulated Protective Order. The Court denies Barr's motion to modify the Protective Order.

SO ORDERED.

██

---

**17.** *See also, e.g., In re "Agent Orange" Product Liability Litigation,* 821 F.2d at 147 (the Second Circuit affirmed the district court's decision that previously-protected materials should be disclosed, on the ground that the litigants could not have relied on the permanence of a protective order that was applicable solely to the pretrial stages of the litigation); *Palmieri v. State of New York,* 779 F.2d at 864–65 (reliance on protective order "renders [movant's] burden heavier than it might otherwise be" and "raises a presumption in favor of upholding [the protective] order"); *Federal Deposit Ins. Corp. v. Ernst & Ernst,* 677 F.2d 230, 232 (2d Cir.1982) ("[o]nce a confidentiality order has been entered and relied upon, it can only be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification."); *Pellegrino v. United States,* 1992 WL 84475 at *4 ("reliance on the Stipulation and Order gives plaintiffs a heavy burden in urging modification.").