**LEE SHUKNECHT & SONS, INC., Petitioner,**

v.

**P. VIGNERI & SONS, INC., Respondent.**

**No. 95–MC–82C.**

United States District Court, W.D. New York.

May 30, 1996.

and Shuknecht has filed a reply brief, Item 17.

## BACKGROUND

Shuknecht is New York corporation, in the business of manufacturing and selling commercial onion harvesters. Its place of business is at 4458 Ford Road, Elba, New York. It is the owner of U.S. Patents 5,024,278 ("the '278 patent"), 5,376,046 ("the '046 patent"), and 5,431,000 ("the '000 patent"), which cover certain features of onion harvester construction and operation. Vigneri is also a New York corporation, with its principal place of business at 5929 Oak Orchard Road, Elba, New York.

At the conclusion of the 1994 onion harvest, Vigneri decided to build a new onion harvester for operation during the 1995 harvest season. Item 16, ¶ 2. Design and construction of the new harvester began in January, 1995, and ended in September, 1995. *Id.*, ¶ 3. The cost was more than $110,000. *Id.*, ¶ 18. Vigneri maintains that the harvester offers significant improvements over known harvesting equipment, including Shuknecht harvesters. *Id.*, ¶ 12. "One improvement is the ability of the Vigneri harvester to operate in conditions of light rain and dew, previously thought impossible for an onion harvester." *Id.*

In order to protect what it claims are trade secrets, which would have been visible upon external inspection during the construction stage but not after completion, Vigneri built the new harvester at a small building owned by the company, in Elba. Item 16, ¶¶ 4–5. The doors to the building were kept locked, and the windows boarded over, to prevent observation. *Id.*, ¶ 5. The company took other steps to preserve confidentiality. *Id.* ¶¶ 6–10, 13. The harvester was completed on September 1, 1995, and moved to Vigneri's main place of business at 5929 Oak Orchard Road, Elba. *Id.*, ¶ 11. It has been kept there, in a locked building, since that time, except during its operation in the 1995 harvest season. *Id.*, ¶ 13. During the harvest, it was operated solely by a Vigneri employee, Philip Vigneri, Jr., on Vigneri land. *Id.*, ¶¶ 13–14.

Martin LuKacher, Rochester, New York, for Petitioner.

Phillips, Lytle, Hitchcock, Blaine & Huber (David S. Teske, of counsel), Buffalo, New York, for Respondent.

## DECISION

## and

## ORDER

CURTIN, District Judge.

Currently before the court is a motion by petitioner Lee Shuknecht and Sons, Inc. ("Shuknecht"), for a order requiring respondent P. Vigneri & Sons, Inc. ("Vigneri"), to show cause why a protective order issued by this court on October 3, 1995, Item 5, should not be rescinded. Item 11. Vigneri has submitted responding papers, Items 14–16,

It appears that in February 1995, soon after work on the Vigneri harvester had begun, Shuknecht came to believe that one of its former employees, Scott Mabon, might be working with others, including Vigneri, who were making, or thinking of making, onion harvesters. Accordingly, Shuknecht, through its attorney Martin LuKacher, wrote to Mabon reminding him that he possessed proprietary and confidential information concerning Shuknecht harvesters, and that he had signed an agreement not to divulge any such information to others. Item 1, Ex. B. At the same time, LuKacher wrote to Vigneri, stating that Shuknecht was the owner of the '278 and '046 patents, that those patents protected certain features of onion harvesters, and that Vigneri had not been authorized to use any of the inventions covered by the patents. *Id.*, Ex. A. Neither Mabon nor Vigneri responded. Item 1, ¶ 6(a).

On September 8, 1995, LuKacher wrote again to Vigneri, stating that he understood that Vigneri had completed an onion harvester that might be covered by one or more claims of the '278 and '046 patents. Item 1, Ex. C. He requested that Vigneri permit him to inspect the machine, within the following week. The inspection would be at the Vigneri premises, and would take about one half hour. If Vigneri did not permit the inspection, LuKacher would "be justified in inferring that the Shuknecht patents are being infringed," and would take legal action. *Id.*

Four days later, on September 12, 1995, Vigneri responded through its attorney, David Teske. Item 1, Ex. D. Teske informed LuKacher that the Vigneri harvester was not available for inspection, due to the demands of the current harvest season. *Id.* at 1. He explained in detail why he believed that it did not infringe any claim of the '278 or '046 patents, and indicated that since there was no infringement, he would consider the matter closed. *Id.* at 1–3.

LuKacher persisted. On September 14, 1995, he wrote to Teske again, asking to be allowed to inspect the Vigneri machine on Friday September 15, at 9:00 a.m., before harvesting of the onion crop would begin for that day. Item 1, Ex. E. Such an inspection

would help to "clear the air." *Id.* LuKacher attached to his letter a copy of the '000 patent, which had been issued on July 11, 1995. However, he made no claim that Shuknecht had any reason to believe that the Vigneri machine infringed any of the claims of that patent. *Id.*

Teske responded on the same day, indicating that Vigneri would grant the request for inspection when the harvesting season ended, by early October at the latest. Item 1, Ex. F. Any inspection would have to be "under an 'attorney's-eyes-only' Confidential Disclosure Agreement as the harvester includes trade secrets of P. Vigneri & Sons." *Id.*

In the next few days, further correspondence between LuKacher and Teske established that although an accommodation might be reached over the question of confidentiality, there would be no agreement allowing for an immediate inspection. Item 1, Exs. G–I; Item 15, Ex. G; *see also*, Item 6.

On September 21, 1995, Shuknecht filed its petition in this proceeding, under Fed. R.Civ.P. 27(a), seeking, *inter alia*, an order requiring Vigneri to allow inspection of its harvester by Shuknecht. Items 1–3. It asserted that it was a prospective plaintiff in an action to enforce the '278, '046, and '000 patents against Vigneri, but had been precluded by Vigneri's actions from obtaining sufficient evidence to support the filing of an infringement claim. Item 1.

In a letter dated October 2, 1995, Vigneri informed the court that it remained willing to allow an inspection at a convenient time after the conclusion of the harvest, if the court were to issue a protective order to safeguard Vigneri's trade secrets. Item 6, p. 2. Accordingly, on October 3, 1995, the court issued an order under which Shuknecht's attorney, LuKacher, would be allowed to conduct a visual inspection of the Vigneri harvester, on October 10, 1995, for the purpose of confirming the absence of patent infringement. Item 5, pp. 1–2. Under the terms of the order, LuKacher was to maintain the confidentiality of, and not provide to anyone, including Shuknecht, any information concerning or relating to the Vigneri harvester obtained through the in-

spection. *Id.* Further, he was not to produce any record (*e.g.,* written description, oral description on audio tape, diagrams, photographs, or videotape) of the inspection. *Id.*

The inspection was duly carried out on October 10, 1995. According to papers submitted by Vigneri, LuKacher performed a thorough inspection, and made a photographic record using both still and video cameras. Item 15, ¶ 12. He was allowed unfettered access to the harvester. *Id.,* ¶ 13. Vigneri's attorney, Teske, orally identified each of the features of the machine that Vigneri claimed as a trade secret. *Id.* Vigneri video-taped the entire inspection. *Id.,* ¶ 14. At one point, LuKacher stated that he disagreed that anything that had been identified as a trade secret by Vigneri was, in fact, so. *Id.* at 15. Near the end of the inspection, LuKacher requested clarification on the configuration of the harvester's sickle bar cutter. *Id.,* ¶ 16. That configuration was identified by Vigneri as a trade secret. *Id.* LuKacher requested that Vigneri provide a drawing of the sickle bar cutter cross-section, for his review. Vigneri complied with this request. *Id.,* ¶¶ 17–18.

On October 19, 1995, LuKacher notified the court that the inspection had taken place, and that it revealed no infringement of the Shuknecht patents. Item 7. The matter could be closed, he stated, except for Vigneri's claims of confidentiality. *Id.* He maintained that "[i]n effect the entire machine is alleged to be a trade secret," and requested that Vigneri be ordered to show cause why any aspect of the design is a trade secret over the machines shown in the Shuknecht patents. *Id.*

Vigneri responded promptly. In a letter to the court dated October 23, 1995, it expressed concern over LuKacher's application, which it characterized as a request that the October 3, 1995, protective order be summarily voided. Item 10. It set forth reasons why the protective order should remain in place, and requested that the court dismiss the underlying Fed.R.Civ.P. 27 proceeding, without modification of the order. *Id.* The parties made further letter submissions to the court. Items 8 and 9. Shuknecht then filed a formal motion for an order requiring Vigneri to show cause why the protective order should not be rescinded. Item 11.

In support of its motion, Shuknecht maintains that during the course of his inspection of the Vigneri harvester, LuKacher observed no trade secrets. Item 11, p. 1. It also maintains that Vigneri has identified the alleged trade secrets in such vague and general terms that they encompass the entire machine. *Id.* at 1–2. Vigneri, it contends, has failed to demonstrate the need for confidentiality, and the protective order should therefore be lifted. *Id.* at 3–4.

In response, Vigneri maintains that Shuknecht has been frustrated in its attempts to obtain the Vigneri trade secrets, and is now improperly seeking the court's assistance to force their disclosure. Item 14, p. 1. It argues that Shuknecht must bear the burden of showing "good cause" for modification of the protective order, and that Shuknecht has failed to meet that burden. *Id.* at 4–5. It has not demonstrated that Vigneri has no trade secrets to protect. *Id.* at 6–12. The protective order was narrowly tailored to place the parties in the positions they held prior to the inspection, except insofar as the inspection might have revealed infringement of the Shuknecht patents; thus it ensured that Shuknecht's Fed.R.Civ.P. 27 motion would not become an improper means of obtaining the Vigneri trade secrets. *Id.* at 13. It was foreseeable that Shuknecht would challenge Vigneri's assertion of trade secrets, and Vigneri was willing to allow the inspection only on the basis that those secrets would be protected. *Id.* at 13–14.

Shuknecht has filed a reply memorandum. Item 17. It reiterates its position that Vigneri has failed to adequately designate its trade secrets. *Id.* at 1–2. Further, it maintains that Vigneri has mischaracterized the nature of Shuknecht's motion, and has wrongly accused Shuknecht of attempting to acquire trade secrets improperly. *Id.* at 2–3. More specifically, it argues that the protective order was an "umbrella" order, issued:

with the understanding that the court would entertain motions if Shuknecht believed that the protective order was used to designate items which were not trade

secrets, erroneously or improperly. Under such circumstances, the burden of going forward is on the proponent of the trade secret.

*Id.* at 2.

## DISCUSSION

■ In ruling on Shuknecht's motion, the nature of this proceeding must be kept in mind. Shuknecht initiated the proceeding as a petition to perpetuate evidence under Fed. R.Civ.P. 27. It claimed that the Vigneri harvester might infringe one or more of its patents, and that Vigneri had thwarted its efforts to obtain sufficient evidence to support the filing of a patent infringement action.

The record makes it clear that from the start, Vigneri was willing to allow Shuknecht's attorney, LuKacher, to inspect the harvester to try to obtain what Shuknecht claimed it was seeking—some evidence of patent infringement. Vigneri's concern throughout has been to protect what it believes to be its own trade secrets. Indeed, in its initial communication to the court, it indicated that it would have no objection to LuKacher's inspection if its trade secrets were protected by a court order. Item 6, p. 2. Accordingly, the court ordered that the inspection could take place, for the limited purpose of confirming (or refuting) Vigneri's claim that there was no infringement of the Shuknecht patents. Item 5. With this exclusive purpose in mind, LuKacher was directed to maintain the confidentiality of *all* other information concerning or relating to the harvester obtained through his inspection. *Id.* at 2.

Shuknecht has accomplished the purpose of its Fed.R.Civ.P. 27 petition by determining that the Vigneri harvester does not infringe its patents. It is disingenuous, to say the least, for Shuknecht to now seek disclosure of information obtained incidentally by LuKacher during the course of the court-ordered inspection. This court will not countenance this attempt by Shuknecht to gain access, through an inspection ordered by the court for the sole purpose verifying the absence of patent infringement, to what Vigneri strenuously argues are its trade secrets.

Neither will it, in the context of a Fed. R.Civ.P. 27 proceeding to perpetuate evidence of patent infringement, be drawn into a dispute between Shuknecht and Vigneri as to whether or not Vigneri's trade secrets claims are, in fact, supportable.

■ "Whether to lift or modify a protective order is a decision committed to the sound discretion of the trial court." *In re "Agent Orange" Product Liability Litigation,* 821 F.2d 139, 147 (2d Cir.), *cert. denied sub nom. Dow Chemical Co. v. Ryan,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987). The Second Circuit has not yet established a legal standard applicable to a motion by a party to lift or modify a protective order for purely private reasons. *See Bayer AG and Miles, Inc. v. Barr Laboratories, Inc.* 162 F.R.D. 456, 460 (S.D.N.Y.1995). In *Bayer,* the court developed a standard under which four factors should be weighed, (1) whether good cause exists for the modification, (2) the nature of the protective order, (3) the foreseeability, at the time of issuance of the order, of the modification requested, and (4) the parties' reliance on the order. *Id.* at 462–63. The *Bayer* standard is simply and appropriately applied in this case.

### 1. Good Cause

As discussed in *Bayer,* Fed.R.Civ.P. 26(c) provides that a protective order may be entered only upon a showing of "good cause" by the party seeking the order, but is silent as to who bears the burden on a motion to modify or lift the order. *Bayer AG and Miles, Inc. v. Barr Laboratories, Inc.* 162 F.R.D. at 463. This court accepts the *Bayer* position that:

> If good cause was not shown when a protective order was initially issued, then the party seeking to maintain the order should bear the burden of establishing the need for continued protection. However, *if the protective order was supported by a showing of good cause, the burden should be on the party seeking modification.*

*Id.* at 464 (emphasis in the original) (quoting *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.,* 106 F.R.D. 551, 554 (S.D.N.Y.1985)).

In this case, there clearly was good cause to issue the protective order, in light of (1) Shuknecht's claim that it was seeking evidence only of infringement of its patents, and (2) Vigneri's assertion of its need to protect its trade secrets. Therefore, the burden lies with Shuknecht to demonstrate good cause for rescinding the order. It has failed to do so.

The only reason that Shuknecht gives for lifting the order is a general claim, based upon the opinion of its own attorney, LuKacher, that the Vigneri harvester incorporates no protectable trade secrets. Balanced against this is the abundant evidence that Vigneri has made strenuous efforts to conceal the details of the construction and operation of its harvester from public view. Whether or not Vigneri is correct in its belief that the harvester contains protectable trade secrets, Shuknecht has demonstrated no need, and has made no claim that it has any demonstrable need, to have access to any information gleaned about the harvester by LuKacher, other than the knowledge that the harvester does not infringe the Shuknecht patents. Indeed, its assertion that the Vigneri harvester incorporates no trade secrets is, in one respect, contrary to its argument that the protective order should be lifted—if there are no trade secrets, then there must be other sources from which Shuknecht may obtain the public information it appears to be seeking.

Shuknecht argues that the proponent of a trade secret claim must bear the burden of proving, *inter alia*, that the claimed secret is, in fact, a trade secret. Item 11, p. 2 (citing *Minnesota Mining and Manufacturing Co. v. Technical Tape Corp.*, 23 Misc.2d 671, 678, 192 N.Y.S.2d 102, 112 (Sup.Ct.1959), *aff'd* 15 A.D.2d 960, 226 N.Y.S.2d 1021 (2d Dept. 1963); and *Integrated Cash Management Services, Inc. v. Digital Transactions, Inc.* 920 F.2d 171, 173 (2d Cir.1990)). While that may be so in the context of a claim of *misappropriation* of a trade secret, it is not a requirement here, where the issue is one of *access to* claimed trade secrets by a competitor.

## 2. The Nature of the Protective Order

The second *Bayer* factor is the nature of the protective order—*i.e.*, the scope of the order, and whether it was stipulated to by the parties or court-imposed. *Bayer AG and Miles, Inc. v. Barr Laboratories, Inc.* 162 F.R.D. at 465–66.

In this case, the protective order was narrowly tailored to allow Shuknecht to perpetuate any evidence there might be of infringement of its patents, while at the same time safeguarding Vigneri's trade secret claims. Under the order, Shuknecht was given precisely what it claimed to be seeking in bringing its Fed.R.Civ.P. 27(a) proceeding—no less and no more. The interests of both parties have been well served under the order, and will be so with the order remaining in place.

There is no merit to Shuknecht's argument that the order was an "umbrella" order, issued with the understanding that the court would lift or modify it if Shuknecht could demonstrate that it was being employed improperly or erroneously to prevent access to items that were not trade secrets. *See* Item 17, p. 2. On the contrary, the court was concerned with providing Shuknecht with access to the Vigneri harvester for purposes of its potential patent infringement action, while trying to avoid entering into a debate over the merits of Vigneri's trade secret claims.

## 3. Foreseeability

The third *Bayer* factor, the foreseeability of the need to lift or modify the protective order, can be simply addressed. Here, Shuknecht has failed to demonstrate *any* need for rescission of the order, *see supra*, and so the question of foreseeability of such need is irrelevant.

## 4. Reliance

The final *Bayer* factor is the " 'extent to which a party resisting modification relied on the protective order in affording access to discovered materials.' " *Bayer AG and Miles, Inc. v. Barr Laboratories, Inc.*, 162 F.R.D. at 467 (quoting *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 106 F.R.D. at 555). This factor clearly

favors Vigneri. Vigneri has relied upon the order as a means of protecting its putative trade secrets, while giving Shuknecht access to the information it claimed to be seeking—information pertinent to the possible infringement of the Shuknecht patents. Vigneri's reliance further justifies the court's determination that the protective order should not be lifted.

### CONCLUSION

For the reasons given above, Shuknecht's motion to rescind the protective order is denied. Since Shuknecht has notified the court that it is satisfied that the Vigneri harvester does not infringe the Shuknecht patents, the purpose of the Fed.R.Civ.P. 27 proceeding has been accomplished. The proceeding is therefore dismissed. However, the protective order filed on October 3, 1995, will remain in force, without modification.

So ordered.