In re Pasquale J. & Vatsala
VESCIO, Debtors.

AMRESCO NEW ENGLAND
II, INC., Plaintiff,

v.

Pasquale J. & Vatsala VESCIO,
Defendants, Counterclaim
Plaintiffs,

v.

The MERCHANTS BANK,
et al., Defendants.

Bankruptcy No. 96–10153.
Adversary No. 96–1015.

United States Bankruptcy Court,
D. Vermont.

April 16, 1998.

M.P. Kehoe, Saxer Anderson Wolinsky & Sunshine, PC, Burlington, VT, for AMRESCO.

L. Chalidze, J.P. Faignant, Miller, Faignant & Whelton, P.C., Rutland, VT, for Debtors.

S.L. Kline, R.A. Pinel, Miller, Eggleston & Cramer, Ltd., J.H. Henn, Foley, Hoag &

Eliot, C. Reiss, Sheehey Brue Gray & Furlong, P.C., for Merchants Bank.

T.L. Hindes, T.L. Holzman, T.A. Schulz, Office of General Counsel, Washington, DC, for FDIC.

K.H. Wheatley, Office of General Counsel, Washington, DC, for Federal Reserve.

M. Ranaldo, Office of U.S. Attorney, Burlington, VT, for FDIC and Federal Reserve.

D.J. Johnson, J.B. Perkinson, Law Offices of Dennis J. Johnson, S. Burlington, VT, for Amicus Leon J. Savoie.

B. Schuster, Schuster, Buttrey & Wing, P.A., Lebanon, NH, for Amici C.R. Davidson Co., CRD Sales & Leasing, Inc., Paul P. Tierney, and Carol S. Tierney ("Windsor Litigants").

## MEMORANDUM OF DECISION ON DISCOVERY MATTERS

FRANCIS G. CONRAD, Bankruptcy Judge.

Debtors ask us [1] to play magistrate to the world by (1) vacating all confidentiality provisions from all prior orders and stipulations in this matter, and (2) declaring "unenforceable as against public policy" the confidentiality provisions of litigation Bank settled in State Court. Debtors' Cross–Motion for Modification of the Omnibus Order, 8 (Document No. 705, Feb. 10, 1998). We decline the invitation to decide matters left to other courts, but we loosen the constraints previously imposed, to permit those courts access to the information necessary to make their own decisions. We first determine the motion to vacate confidentiality of discovery in this proceeding, then deal with confidentiality proceedings of the state court settlement as it relates to this proceeding.

## I. MOTION TO VACATE CONFIDENTIALITY IN THIS COURT

An acknowledged purpose of the motion to vacate confidentiality in this action is to per-

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to this Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (K), and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed. R.Civ.P. 52, as made applicable by Fed. R.Bkrtcy.P. 7052.

mit Debtors' counsel to share the fruits of their discovery in this Court with others litigating against Bank in other Courts. This is a valid purpose in and of itself. Moreover, Debtors say the sharing will facilitate their rebuttal in the on-going trial with Bank. The documents at issue can be subdivided into three distinct categories: (1) documents discovered from party plaintiff AMRESCO arising from AMRESCO's purchase from Bank of a portfolio of troubled loans, including loans to Debtors ("AMRESCO Documents"); (2) documents in which the Federal Reserve, FDIC, and State of Vermont Department of Banking, Insurance, Securities and Health Care Administration ("Vermont") claim a regulatory interest in confidentiality ("Agency Documents");[2] and (3) "Bank Documents."

AMRESCO, Federal Reserve, FDIC, and the State all oppose Debtors' motion as it relates to the particular documents in which they are respectively interested. Their arguments focus primarily on their unique interests in confidentiality. Bank opposes generally, and argues that Debtors fail to meet the legal standard to modify an existing protective order. The standard Bank proposes, however, was adopted in far different circumstances in a patent case. Nevertheless, we find it gives a useful structure to our decision. *Bayer AG and Miles, Inc. v. Barr Laboratories, Inc.*, 162 F.R.D. 456, 462–63 (S.D.N.Y.1995) held

> that the following factors should be weighed where a party seeks to modify a protective order for private reasons:
>
> (1) good cause—if good cause was shown for the original protective order, the burden is on the party seeking modification to show good cause for modification; if good cause was not shown for the original protective order, the burden of showing good cause is on the party seeking continued confidentiality protection;
>
> (2) the nature of the protective order (i.e., narrow vs. broad, court imposed vs.

court approved upon stipulation of the parties);

> (3) the foreseeability at the time of the original protective order of the modification now requested; and
>
> (4) the parties' reliance on the protective order.

Amicus curiae briefs supporting Debtors' motion have been filed by litigants in two other pending cases, one in the federal District Court and one in State Court. We will address each of the three categories of documents in turn, and then make specific orders as to each of the two Amici.

### A. AMRESCO Documents

 Debtors' motion to vacate is denied in its entirety as to AMRESCO Documents. "Bottom feeders" like AMRESCO, though much reviled, play an important role in the efficient functioning of our economy. They help keep the economy liquid, permitting creditors to cash out, and bring into the Bankruptcy arena a strong voice advocating for the interests of the classes of creditors whose interests they acquire. They trade in distressed loans, which they sometimes acquire at deep discounts from the face amount of the obligations. AMRESCO claims the methods and strategies it uses in evaluating loan portfolios are confidential proprietary information.

AMRESCO has been an eminently reasonable participant in this litigation. It complies with court orders, files reasonable pleadings with reasonable arguments, acknowledges with candor mistaken legal positions, and reaches reasonable accommodations on points of contention. Our experience is that AMRESCO produces what it's supposed to more or less when it's supposed to on more or less reasonable terms. No particular need has been shown by Amici for the AMRESCO information. Accordingly, no modification of the existing constraints on confidentiality will be permitted as to AMRESCO Documents.

---

**2.** The Agency Documents are more precisely identified in two prior opinions in this case in which we denied the privilege claims of Federal Reserve, *Vescio v. Merchants Bank (In re Vescio),* 208 B.R. 122 (Bankr.D.Vt.1997) (*"Vescio I"*), and FDIC, *Merchants Bank v. Vescio (In re Vescio),* 210 B.R. 913 (Bankr.D.Vt.1997) (*"Vescio II"*).

## B. Agency and Bank Discovery Practices

■ Discovery from Bank, Federal Reserve, and FDIC in this proceeding has been prolonged, gruelling and contentious, evidencing almost a goal-line-stance mentality. Based on the pleadings on file with this Court, the arguments and representations of counsel, and on the record in this matter, we make the following findings of fact and conclusions of law:

1. "Bank, FDIC, and Federal Reserve have prolonged the discovery phase of this adversary proceeding by engaging in tactics including unreasonable refusal to comply with Court orders and discovery requests, reargument of matters settled on appeal, and inundating the Court with documents for *in camera* review that were plainly relevant and not privileged." *Omnibus Discovery Order and Reinstatement of Automatic Stay on Debtors' Residence, AMRESCO v. Vescio*, No. 96–1015, slip op. at 8–9 ¶ H(3) (Bankr. D.Vt. June 25, 1997).

2. Bank has admitted that it withheld documents that Debtors requested and that we ordered Bank to produce. *Id.*, at 7 ¶¶ G(2)-(4).

3. "Bank has variously claimed mistake, confusion, and lack of permission from FDIC or Federal Reserve to release documents which this Court has ordered disclosed. It has consistently used any available excuse to evade disclosure of plainly relevant material. It has failed to comply with Debtors' discovery requests, this Court's orders, and Fed. R.Civ.P. 26(a)(1), as made applicable by Fed. R.Bankr.P. 7026." *Id.*, at 7–8 ¶ G(5).

4. Debtors were frustrated in their efforts to obtain full, free, and fair discovery in this proceeding until we brought our coercive powers to bear on Bank, FDIC and Federal Reserve.

A. Bank was "ORDERED to produce every document conceivably within the meaning of any discovery request or order of this Court," with sanctions of $1,000 per day per document that was not timely produced. *Id.*, at 8 ¶ G(6). We also warned Bank that "[c]ontinued abuse of the discovery process may also result in dismissal, with prejudice, of all claims and defenses asserted by The Merchants Bank, and judgment for Debtors on their counterclaims." *Id.*, at 8 ¶ G(7).

B. We ordered Debtor to serve a notice of deposition and subpoena duces tecum on the general counsels of the appropriate district offices of Federal Reserve and FDIC "for all reports of investigation and related documentation on, with or about The Merchants Bank and Merchants Bancshares, Inc., dating from 1986 to the present." *Id.*, at 6 ¶ F(1). We warned, "[i]f the documents are not delivered for production, body executions for those named in the subpoenas will issue forthwith with incarceration to continue until such time as production is made." *Id.*, at 6 ¶ F(4).

5. The coercive measures imposed against Bank, FDIC, and Federal Reserve here have produced a wealth of discoverable material unavailable in other actions.

We hold that the foregoing factual findings constitute all the good cause we need to modify confidentiality as hereafter provided. Additional and independently sufficient grounds for good cause are raised below.

## C. The Tenuous Basis for Confidentiality of Agency and Bank Documents

Our toleration of confidentiality of anything in either category is tenuous and attenuating. Bank argues that we should leave confidentiality in place as to all documents because document-by-document review would be impractical. This argument falls flat with respect to Agency Documents. We sat with glazed eyes, for hours, reviewing Agency Documents one by one. We found no claimed privilege applied. We nevertheless permitted those documents to remain confidential, and have accepted the somewhat cumbersome restrictions that limited access entails. We did so only because of the respect we gained for the federal banking regulators who work in the trenches as we reviewed the documents they generated in connection with Merchants Bank. We came away from our review deeply impressed by a superlative job. Regulators' skillful intervention saved Bank from itself. Confidentiality is a part of a process that

works; whether it is essential to that process has yet to be addressed.

The Agencies contend that we should prohibit further dissemination of Agency Documents because privilege must be determined on a case-by-case basis. Having read the documents, we take a different view. Those documents simply do not qualify for the privilege claimed.[3] Whether they are relevant might vary in the particular case, but that's for the judge or magistrate in that case to decide. It was, however, clear to us from our review that any lawyer representing litigants against the Bank for actions arising during the period the Agencies were involved with Bank would have to review those documents to understand the context in which the case arose.

Although Agency lawyers have proffered no cogent rationale for keeping Agency Documents confidential, we are reluctant to make them public at the risk of disrupting a system that works. However, we suggest, strongly, that Agency lawyers build their arguments from the ground up, beginning with a lucid explanation from the regulators themselves of why and whether confidentiality matters. Judicial patience is wearing thin. In the meantime, and for the moment, we will maintain confidentiality as it exists, in the expectation that someday the Agencies will justify it.

Bank's argument for confidentiality in bulk has some merit with respect to Bank Documents. We have, thankfully, not had to review the 120 boxes of documents Bank ultimately produced to Debtors. Nor do we intend to. Sheer volume warrants treating Bank Documents as presumptively confidential. Bank's insistence on maintaining customer confidentiality is well taken, and Debtors concede the point. This is the primary basis on which any confidentiality remains for Bank Documents. Bank's argument that it will have to re-produce everything to other litigants if Debtors' motion is granted is a red herring. Debtors' motion, and this Order, relate only to documents that Debtors have obtained. Customer names have already been redacted from those documents. Vacation of confidentiality as to redacted Bank Documents would be an appropriate sanction for Bank's abusive discovery tactics. We hesitate to go that far only to avoid generating more unnecessary litigation in this action.

■ We will grant limited relief as to Agency and Bank Documents. Bank and Agencies bear the burden of proof on maintaining confidentiality, because no good cause has ever been established for the existing confidentiality provisions. They have failed to carry their burden. Even if the burden were on Debtors, however, good cause for the relief sought has been demonstrated. We imposed the existing constraints reluctantly, as a matter of administrative expedience, despite the fact that no reasonable basis has yet been established for confidentiality of the discovery at issue. It facilitated getting this matter tried. Our discomfort with confidentiality here has been regularly expressed, and it was certainly foreseeable that we would change the rules. Reliance is not an issue. Bank and Agency Documents were produced as a result of judicial coercion. Any legitimate interests in confidentiality that may exist will not be threatened by the modifications we make.

Much of the argument by Bank and the Agencies in opposition to the motion suggests that, from their perspective at least, the present system adequately protects their interests. Accordingly, although we will permit more widespread dissemination of the documents, as hereinafter set forth, we do so with confidentiality intact. The structure that worked here can be extended to include other litigants in other courts without disrupting the protection of confidentiality the Agencies and Bank may or may not be entitled to. Our decision only makes the information available to other litigants. We do not presume to suggest what other Courts should do with that information. Any orders they issue with respect to discovery in matters pending before them, will, obviously, supersede our orders.

---

**3.** Our findings and conclusions about Agency Documents are found in *Vescio I, supra,* 208 B.R. 122 (Bankr.D.Vt.1997) (Federal Reserve), and *Vescio II, supra,* 210 B.R. 913 (Bankr.D.Vt.1997) (FDIC).

### D. Non–Party Requests for Access

■ The pleadings indicate that at least five other lawsuits have been filed against Bank in state and federal courts. Bank settled one action under a strict confidentiality order that Debtors seek to crack in a related matter we address hereafter. The Merchants Bank v. Gaynes Plaza Partners, et al., S293–93 CnC (Chitt.Sup.Ct.) (hereinafter "Gaynes Plaza"). A second action is pending on appeal before the Second Circuit. Savoie, et al. v. Merchants Bank, et al., 1:94–CV–312 (D.Vt.) ("Savoie"). The three remaining actions have been consolidated in Merchants Bank v. C.R. Davidson Co., Inc., et al., Docket No. 644–11–95–WnCv, pending in Vermont's Windsor Superior Court. Bank's adversaries in the latter two proceedings request direct access to the discovery obtained by Debtors. We address each request separately.

### 1. Savoie Action

Non-party Leon J. Savoie asks that we either vacate confidentiality altogether, or, in the alternative, grant his counsel "access to documents produced in this action, within the confines of the existing confidentiality order." Savoie's Amicus Brief in Support of Vescios' Partial Objection to TMB's Emergency Motion and Vescios' Cross–Motion for Modification of the Omnibus Order, 2 (Document No. 717, March 16, 1998) ("Savoie Brief"). Savoie alleges that documents produced in this proceeding may prove what is in essence a fraud upon the United States District Court, of which the Bankruptcy Court is an adjunct.

Savoie was the named plaintiff in a putative class action against Bank, related entities, and officials (collectively "Merchants") "on behalf of all clients of Merchants Trust who suffered losses as a result of Merchants' actions in fraudulently inducing those clients to invest in highly speculative derivative instruments." Savoie Brief, 2. Shortly after the Savoie Action was filed on Oct. 24, 1994, but before the class was certified, Merchants settled the case out from under Savoie by paying the injured class $9.2 million for losses suffered. Litigation has centered since on the issue of whether the Savoie Action was a substantial cause of the settlement, entitling Savoie and/or his attorney to a payoff, *Id.*, 2–5, and whether Bank's position that it was not was in bad faith, justifying another payoff. Savoie alleges in the Second Circuit that:

> Defendants' ostensible justification for engaging in the last three years of litigation has been their implausible assertion that the **Savoie** suit did not cause Merchants to make the 1994 payment. That assertion now being admitted to be a myth, one is left with the inescapable conclusion that defendants, so as to punish plaintiff's counsel for causing Merchants to make the $9.2 million payment, engaged in their no cause litigation charade as part of a malicious attempt to deprive plaintiff's counsel of fees or, at a minimum, to make it as expensive as possible for plaintiff's counsel to obtain his fees.

Appellants/Cross Appellees' Supplemental Brief in the Main Appeal, 3, Exh. A to Debtors' Opposition to Merchants Bank's Request for a Stay, and Reply Memorandum in Regard to its Cross–Motion for Modification of the Omnibus Order (Document No. 729, March 30, 1997).

In his Amicus Brief, Savoie alleges a whole series of discovery abuses by Merchants in his case. His allegations are consistent with Bank discovery practices that we have experienced here. Savoie alleges that Debtors here have obtained documents that Merchants denied existed in his case. More particularly, he believes Debtors have evidence to establish "bad faith litigation, spoliation and Fed.R.Civ.P. 37(c) abuses" in his case. Savoie Brief, 2. The gravamen of his pleading is that Merchants lied to the District Court Judge and Magistrate Judge about substantial causation in his case and Debtors have the evidence to prove it.

■ Bank opposes Savoie's request on the grounds that it is procedurally improper, he lacks standing, we lack jurisdiction, and the documents he seeks aren't relevant in his action. We disagree. Bank's procedural arguments are unavailing. A court has power and jurisdiction to determine whether sanctionable conduct, including fraud upon the court, has been committed in proceedings

before it. *In re St. Johnsbury Trucking Co.*, 1994 WL 832007, *1. "A fraud on the court ... occurs when it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by hampering the presentation of the opposing party's claim or defense." *In re St. Johnsbury Trucking Co.*, 184 B.R. 446, 454 (Bankr.D.Vt.1995).

Savoie makes serious allegations of misrepresentation to our District Court. He points out testimony by Bank's president in this proceeding that is plainly inconsistent with prior testimony in the Savoie proceeding, lending credibility to his arguments. Savoie's substantive allegations of egregious conduct are unrebutted. We will never knowingly permit any order of ours to shield a party from accountability to the Court of which we are a unit. That is a sufficient basis to permit Savoie access to Debtors' discovery in this proceeding. An additional basis is simply in the interests of justice. Where the legitimate interests in confidentiality of the parties can be accommodated, there is no basis for denying litigants access to the fruits of other litigants' labors. Bank simply has no right to make each litigant jump through every hoop jumped through by all other litigants. Finally, we find merit in Debtors' argument that cooperation and mutual sharing of discovery with Savoie will assist Debtors in impeaching the credibility of Bank's President, who has testified in both cases.

Accordingly, we will ORDER that Debtors may disclose to Savoie discovery in their possession in this action as follows:

1. AMRESCO Documents: No discovery shall be made.

2. Agency Documents: Savoie's counsel shall file with this Court, the District Court, the Second Circuit, and both federal agencies, an acknowledgment that it is bound by and shall in all respects comply with this Court's Omnibus Order and all other orders and Court-approved stipulations governing those documents in this proceeding, until such time as the District Court or the Court of Appeals otherwise orders. Upon filing of such acknowledgments, Debtors may make their discovery available to counsel for Savoie.

3. Savoie may have complete and unfettered access to all Bank documents, and his use thereof shall be governed by any appropriate outstanding orders of the District Court in his action.

## 2. Windsor Action

Debtors' counsel here have filed an appearance as special counsel for defendants in the Windsor action, to prosecute their claims and defenses against Bank. Bank fairly observes that Debtors' pleadings here advance the interests of the State Court defendants that Debtors' counsel now represents. While obviously true, it is of no import. Various of those defendants have also filed an Amicus Brief (Document No. 722, March 18, 1998) in support of Debtors' motion to terminate confidentiality. Their Amicus Brief includes as an exhibit a "Stipulation and Consent Order Protecting the Confidentiality of Certain Documents" entered in that case. We have reviewed the State Court Consent Order and find that it affords Bank as much if not more protection for its documents than we have afforded Bank in this Court, but it does not address FDIC and Federal Reserve Documents. Accordingly, we hereby ORDER that Debtors may disclose to the Windsor Litigants discovery in their possession in this action as follows:

1. AMRESCO Documents: No discovery shall be disclosed.

2. Agency Documents: Counsel for the Windsor Litigants shall file with this Court, the Windsor Superior Court, the State of Vermont Department of Banking & Insurance, and both federal agencies, an acknowledgment that it is bound by and shall in all respects comply with this Court's Omnibus Order and all existing orders and stipulations governing Agency Documents, until such time as a Vermont State Court with competent jurisdiction otherwise orders. Upon filing of such acknowledgments, Debtors may make their discovery available to counsel for the Windsor Litigants.

3. The Windsor Litigants may have complete and unfettered access to all Bank Documents, subject to all terms and conditions of the Windsor Superior Court's Consent Order on confidentiality.

## II. Motion to Declare State Court Settlement Order "Unenforceable as Against Public Policy"

■ Debtors seek discovery of litigation Bank settled in State Court. They ask us to declare the settlement agreement invalid as against public policy, so they can have informal conversations with persons subject to the Agreement. We are unwilling to go that far.

The parties in The Merchants Bank v. Gaynes Plaza Partners, et al., S293–93 CnC (Chitt.Sup.Ct.) (hereinafter "Gaynes Plaza"), entered into a "Settlement and Termination Agreement" dated May 19, 1995. Bank has provided us with an unsigned copy of a State Court "Judgment and Decree of Foreclosure," with the same date, which we will assume for purposes of argument that the State Court did sign. That Judgment makes no reference to confidentiality, nor rests upon any document which does. No State Court interests are implicated.

The Agreement itself permits disclosure of the information "to the extent such disclosure is required by applicable law or regulation or is ordered by a court of competent jurisdiction." Moreover, the confidentiality provisions are structured to be simultaneously a shield and a sword. It bars disclosure against Bank, but permits Bank to disclose whenever "non-disclosure might reasonably be expected to adversely affect [Bank's] ability to defend its interest." Disclosure is required by the discovery rules operative in this Court, and we will order it. Accordingly, the Agreement is inoperative by its own terms.

Debtors have subpoenaed production of documents from a third party who was involved in the Gaynes Plaza litigation and is bound by the Agreement. Bank resists on the grounds that discovery is closed, we should abstain to let the Vermont State Court decide "important unsettled state public policy issues," and the documents are not relevant. We reject Bank's argument that discovery is closed for several reasons. First, as Bank points out, Debtors originally demanded production before the end of discovery. The documents were not produced. Applicable law required production. Second, Bank's discovery abuses have so distorted the playing field that a little flexibility is necessary to restore the balance. Debtors had to fight prolonged battles to get what they were entitled to, then were overwhelmed by the sheer volume of what they received. Allowing Bank to hide behind this confidentiality agreement would just perpetuate that pattern. Third, Debtors concede the inadmissibility of the evidence for their case in chief, and seek it for rebuttal, an eminently proper purpose.

Bank's attempt to send Debtors back into State Court is a frivolous argument so totally devoid of merit that it evidences disrespect for the Court and opposing counsel. As noted above, the State Court's Judgment in no way even references the Agreement. Bank's relevance argument also lacks merit. In the first place, the record establishes that Bank's positions on relevance are unreliable. In addition, discovery does not have to be relevant. "The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1), as made applicable by Fed.R.Bankr.P. 7026. Finally, a comparison between the counterclaims against Bank in Gaynes Plaza and Debtors' claims here puts Debtors' request well within the bounds of reasonable discovery.

Debtors' motion to void confidentiality provisions of the Gaynes Plaza Agreement as against public policy is denied. Bank's motion to quash Debtors' subpoena is denied.

## III. Bank's Request for Stay

Bank requested that we grant a stay pending appeal in the event we modified confidentiality in any way. That request is denied. It is unlikely Bank or Agencies would prevail on appeal. The delay occasioned by an appeal would compromise Debtors' ability to buttress their case on rebuttal, and hinder Amici's access to discoverable information. Existing protections for confidentiality on al-

ready discovered documents are maintained in place, so the risk of legally cognizable harm to Bank and Agencies is unlikely.

Debtors shall submit an order consistent with the factual findings and legal conclusions herein within 10 days of the date this Memorandum of Decision is issued. Parties opposing shall have five days to object to the form of the order.