**INFINEON TECHNOLOGIES AG, Plaintiff,**

v.

**GREEN POWER TECHNOLOGIES LTD., Defendant.**

Civil Action No. 03–1565 (JDB).

United States District Court, District of Columbia.

June 17, 2005.

Samuel J. Waldon, Baker Botts L.L.P., Washington, DC, for Plaintiff.

Eric Samuel Namrow, Gary M. Hnath, Venable LLP, Washington, DC, for Defendant.

### *ORDER*

JOHN D. BATES, District Judge.

Plaintiff Infineon Technologies AG ("Infineon") has brought a declaratory judgment

action regarding the validity of enforcement of United States Patent No. 6,307,361 ("the '361 patent") held by defendant Green Power Technologies Ltd. ("GPT"). Presently before the Court is a motion by GPT to modify the Protective Order in place in this case. GPT's proposed modification would permit certain discovery obtained in this case to be used in related patent litigation between the parties in Germany. Infineon opposes the modification to the protective order, arguing that 28 U.S.C. § 1782(a), which permits a district court to order the production of documents for a foreign tribunal, does not mandate disclosure in this instance. For the following reasons the Court will grant GPT's motion to modify the protective order.

## BACKGROUND

At one time, Infineon and GPT considered a business partnership to produce factor correction devices, but their relationship ended in litigation. GPT sued Infineon in Germany for alleged unlawful use of GPT business information and Infineon reciprocated with this declaratory judgment action. In the course of this case, the parties stipulated to, and the Court entered, a Protective Order covering the disclosure of documents in discovery. See December 23, 2004 Protective Order ("Protective Order"). During discovery Infineon produced to GPT certain documents that GPT believes would be relevant to the litigation in Germany. Initially GPT asked Infineon for permission to disclose those documents to GPT's German counsel, Adv. Christian Harmsen, who could then assess the documents' relevance to the German litigation. See Def. Mot., Declaration of Michelle Marcus, Ex. A. When Infineon rebuffed those overtures, see id., Ex. B, GPT filed this motion to amend the Protective Order. Simultaneously, GPT has petitioned the German court, according to German rules of procedure, to require production of the same Infineon documents in question here. See Pl. Opp'n, Ex. 1.

## LEGAL STANDARD

Pursuant to Federal Rule Civil Procedure 26(c), a court may issue a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. See Fed.R.Civ.P. 26(c). However, protective orders are not permanent and may be modified to serve important efficiency or fairness goals in the court's discretion. See E.E.O.C. v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C.Cir.1998) (holding that district courts retain power to modify or lift protective orders) (citing In re "Agent Orange" Prod. Liability Litig., 821 F.2d 139, 145 (2nd Cir.1987)); Alexander v. Federal Bureau of Investigation, 186 F.R.D. 99, 100 (D.D.C.1998) ("Whether to lift or modify a protective order is a decision committed to the sound discretion of the trial court."). Modification of a protective order requires a showing of good cause. See Alexander, 186 F.R.D. at 100 (citing Indep. Petrochemical Corp. v. Aetna Cas. and Sur. Co., 1988 WL 23257, *4 (D.D.C. March 2, 1988) (internal quotation and citation omitted)). "Good cause" implies changed circumstances or new situations; a continuing objection to the terms of an order does not constitute good cause to modify or withdraw a protective order. See Bayer AG & Miles, Inc. v. Barr Labs., Inc., 162 F.R.D. 456, 464 (S.D.N.Y. 1995) (weighing the defendant's need for modification to permit in-house counsel to attend depositions against the plaintiff's need for protection). The party seeking modification of a protective order bears the burden of showing that good cause exists. See Alexander, 186 F.R.D. at 57.

Some courts in this district have applied a four factor test for determining when a protective order should be modified. See United States v. Diabetes Treatment Ctrs. of Am., 2004 WL 2009414, *2–4 (D.D.C. May 17, 2004). The relevant factors are: (1) the nature of the protective order; (2) the foreseeability of the modification; (3) the parties' reliance on the protective order; and (4) the presence of good cause for the modification. See id.; Flatow v. Islamic Republic of Iran, 196 F.R.D. 203, 206 n. 1 (D.D.C.2000) (citing Bayer AG & Miles, Inc. v. Barr Labs., Inc., 162 F.R.D. at 462–63), vacated in part on other grounds, 305 F.3d 1249 (D.C.Cir.) (hereinafter referenced as the "Bayer factors").

### ANALYSIS

■ GPT seeks modification of the Protective Order so that it can provide to its German counsel certain Infineon documents that GPT obtained through discovery in this case. GPT would want the Protective Order further modified so that its German counsel could possibly submit relevant documents to the German court. GPT contends that the documents in question are "highly relevant" to the German proceeding because they show how Infineon used GPT's know-how "in defiance of the non-disclosure agreements." *See* Def. Mot. at 3. GPT also alleges that it may not be able to get these documents in the German litigation because German discovery procedures are much more restrictive than those in the United States, requiring a party to identify the requested documents with specificity. *Id.* at 5. Finally, GPT contends that confidentiality concerns can be allayed because GPT's German counsel will agree to be bound by the terms of the Protective Order and any of these documents provided to the German court can be submitted as confidential. *Id.* at 4. In response, Infineon expresses concerns about maintaining the confidentiality of these documents. Infineon also contends that § 1782 does not authorize this type of disclosure.

After examining the arguments relevant to this motion, the Court concludes that GPT has sufficiently established good cause for this limited modification of the Protective Order. First, the weight of the *Bayer* factors counsels in favor of the modification. While the Protective Order covers all documents produced in discovery, it does not contain an express mechanism for changing who can have access to the documents. This counsels in favor of a modification. *Cf. Diabetes Treatment Ctrs. of Am.*, 2004 WL 2009414, at *3 (where protective order is comprehensive and has a mechanism for disputed designations, there is less justification for the court changing designations under the protective order). Second, while it may have been foreseeable that some of the documents discovered in this case would be useful in the German litigation, this factor alone is not dispositive. Third, there is no issue of reliance in this case because the confidentiality provisions will remain in place. *See id.*,

2004 WL 2009414, at *4 (where party sought modification through changing confidentiality designations, reliance of nonmoving party a significant factor in denying the motion). Finally, and most importantly, GPT has made a showing of good cause for the modification. GPT has alleged the documents may be highly relevant to the German litigation. *See Bell v. Chrysler Corp.*, 2002 WL 172643, * 1–2 (N.D.Tex. Feb.1, 2002) (where documents in one matter would be relevant to a similar proceeding good cause existed to modify a protective order). There are also significant efficiency gains from avoiding potentially duplicative discovery. *See Nat'l Children's Ctr.*, 146 F.3d at 1046 (efficiency is one goal in permitting modification of protective order).

Beyond application of the *Bayer* factors, Infineon has also not shown how it would be prejudiced by the proposed modification. Although GPT certainly bears the burden of establishing good cause, *see Alexander*, 186 F.R.D. at 57, Infineon has not offered any real challenge to GPT's argument that these documents would be highly relevant to the German litigation. In fact, Infineon is completely silent on the question of the relevance of the documents. Instead, Infineon focuses on issues of confidentiality, which concededly are very important in this motion. But confidentiality concerns can be allayed by the limited modification, and by putting GPT's German counsel under the terms of the Protective Order. *See In re Jenoptik AG*, 109 F.3d 721, 723 (Fed.Cir.1997) (where foreign counsel still bound by protective order and district court requests foreign tribunal treat documents confidentially, nonmoving party's confidentiality concerns allayed). The German court has discretion on whether to treat the documents as confidential, but the parties appear to agree that the German court has a procedure to keep certain documents confidential. Therefore, this Court can order GPT to submit the documents to the German court using any and all available German confidentiality rules. Beyond these general concerns about confidentiality, Infineon has not shown how it will be prejudiced by the modification. Given that it is more efficient to permit discovery to be shared in a forum

litigating similar issues, GPT's motion to modify the protective order should be granted. *See Bell*, 2002 WL 172643, at *2.

A particularly relevant case here is *Jenoptik AG*, where the Federal Circuit denied a petition for a writ of mandamus to compel the vacation of a district court order modifying a protective order to permit a confidential deposition to be used in a related action in a foreign court. 109 F.3d 721. The non-moving party's arguments closely track those raised by Infineon here, *i.e.*, confidentiality and circumventing German discovery rules. In *Jenoptik*, information was gathered through a deposition that one party believed would be relevant in similar litigation before a German court. *Id.* at 722. The district court permitted modification of the protective order so that the deposition testimony could be shared with the German court. *Id.* In denying the writ by the non-moving party, the Federal Circuit noted the limited nature of the modification and the steps taken to protect the confidentiality of the testimony. *Id.* at 723. The Federal Circuit also noted that the modification did not circumvent the German rules of discovery because the modification simply permitted the party to submit the testimony to the German court, and it remained in the discretion of the German court whether or not to accept the testimony. *Id.* These are essentially the same issues here, and this Court finds the Federal Circuit's reasoning in *Jenoptik AG* very persuasive.

The parties also both cite to 28 U.S.C. § 1782(a), which governs discovery for foreign tribunals, to support their respective positions. Although § 1782 is not controlling in this case, *see Jenoptik AG*, 109 F.3d at 723, consideration of the reasoning that goes into a § 1782 ruling is helpful in assessing GPT's motion to modify the Protective Order. In relevant part § 1782 states: "The district court of the district in which a person resides or is found may order him ... to produce a document ... for use in a proceeding in a foreign or international tribunal." In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 124 S.Ct. 2466, 2483, 159 L.Ed.2d 355 (2004), the Supreme Court iden-tified four factors to consider in assessing a discovery request under § 1782:

> (a) whether the person from whom discovery is sought is a participant in the foreign proceeding; (b) the nature of the foreign tribunal, the character of the proceedings underway, and the receptivity of the tribunal to U.S. federal judicial assistance; (c) whether the request is an attempt to circumvent foreign proof gather restrictions; and (d) the intrusiveness or burden imposed by the discovery.

Applying the *Intel* factors to this case, the weight of the factors in favor of granting the discovery further convinces this Court that modification is appropriate. GPT and Infineon's participation in the German trial militates against permitting the discovery by § 1782 under the *Intel* factors because the presumption is that they can obtain whatever discovery they need through the German court. *See Advanced Micro Devices, Inc. v. Intel Corp.*, 2004 WL 2282320, *2 (N.D.Cal. Oct.4, 2004) (fact that both parties were participants in foreign tribunal weighs against ordering discovery). However, the final three factors of the *Intel* test all counsel in favor of the discovery. The nature of the German court is very similar to the proceeding in this Court. Moreover, the German court has not specifically rejected this discovery. *Cf. Advanced Micro Devices*, 2004 WL 2282320, at * 2 (significant factor in rejecting § 1782 request was foreign tribunal stating it did not want the materials). Here, the receptiveness of the German court to these documents is unknown. However, because this Court will not be requiring that the documents in question be given to the German court, that court retains the choice whether to accept the materials offered by GPT's German counsel. *See Jenoptik AG*, 109 F.3d at 724 (factor in granting modification was that the discretion on admissibility of documents remained with German court).

Next, there is no evidence that GPT is using the modification to circumvent German procedural rules. Although the documents sought here might be obtained through German discovery procedures, GPT's German counsel would need to identify the documents with specificity in order to obtain them in the

German court. *See* Pl. Opp'n, Exs. 3 & 4, German Civil Procedure Code §§ 421, 424. GPT is also currently pursuing these documents in the German court. *See id.*, Ex. 1. It would be peculiar if GPT were denied use of otherwise relevant documents because of the peculiarities of the German discovery procedures. *See In re Application of Servicio Pan Americano de Proteccion, C.A.*, 354 F.Supp.2d 269, 274 (S.D.N.Y.2004) (granting § 1782 request and noting that movant's efforts were "reasonable" given peculiarity of Venezuelan procedure, i.e., requirement of identifying documents with specificity). Given that these documents could actually be obtained under German procedures, GPT's attempts more efficiently to obtain use of relevant documents from this Court does not evidence an intent to circumvent German discovery rules. Lastly, there is no burden on Infineon in this instance because the documents have already been produced, and GPT is only asking to share the documents that it possesses with its German counsel and perhaps with the German court.

Weighing all the factors identified in *Intel*, were this a § 1782 request there certainly would be a strong basis to furnish these materials to the German court. Coupling this reasoning with GPT's showing of good cause, the measures that can be taken to ensure the continuing confidentiality of these documents, and the litigation efficiency gains from sharing the information, the Protective Order should be modified.

Accordingly, it is this *17th* day of June, 2005, hereby

**ORDERED** that GPT's motion to modify the Protective Order is GRANTED; it is further

**ORDERED** that the Protective Order is modified in accordance with the changes proposed by GPT; it is further

**ORDERED** that GPT shall file with the Court an amended protective order incorporating those changes; and it is further

**ORDERED** that submission of any documents to the German court by the parties shall be done utilizing all applicable local procedures for ensuring the confidentiality of the documents.