# United States Court of Appeals for the Federal Circuit

_____

**IN RE: POSCO, POSCO AMERICA CORPORATION,**
*Petitioners*

_____

2015-112

_____

On Petition for Writ of Mandamus to the United States District Court for the District of New Jersey in No. 2:12-cv-02429-SRC-CLW, Judge Stanley R. Chesler.

_____

**ON PETITION**

_____

J. MICHAEL JAKES, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, for petitioners. Also represented by CHARLES THOMAS COLLINS-CHASE; CHARLES HYUK SUH, Reston, VA.

MARK REITER, Gibson, Dunn & Crutcher LLP, Dallas, TX, for respondent Nippon Steel & Sumitomo Metal Corporation. Also represented by MATTHEW D. MCGILL, Washington, DC.

ADA ELSIE BOSQUE, Office of International Judicial Assistance, Civil Division, United States Department of Justice, Washington, DC, for amicus curiae United States. Also represented by BEN C. MIZER, JEANNE E. DAVIDSON.

_____

Before NEWMAN, DYK, and HUGHES, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Concurring opinion filed by *Circuit Judge* HUGHES.

DYK, *Circuit Judge*.

## O R D E R

Petitioners POSCO and its U.S. subsidiary POSCO America Corporation (collectively, "POSCO") seek a writ of mandamus from an order of the United States District Court for the District of New Jersey modifying the court's protective order to allow foreign courts access to petitioners' proprietary information. We grant the petition.

I

On April 24, 2012, Nippon Steel & Sumitomo Metal Corporation ("Nippon Steel") filed suit in the District of New Jersey, charging POSCO with patent infringement and unfair competition. On April 5, 2013, the district court entered a protective order prohibiting the cross-use of confidential materials which "shall be used by the receiving Party solely for purposes of the prosecution or defense of this action." Ex. E, at 2. Following the entry of the protective order, POSCO produced several million pages of documents containing confidential information.

Nippon Steel also brought suit in Japan against POSCO (based in Korea) for alleged trade secret misappropriation. In response, POSCO filed its own declaratory judgment action in Korea, asserting that it had not stolen Nippon's trade secrets.

Given that discovery in this country's federal court system is more generous than in Japan and Korea, Nippon Steel, attempting to obtain and use documents that perhaps it would not otherwise be able to obtain and use in those foreign courts, moved the district court to modify its discovery protective order for the purposes of providing foreign counsel in the Japanese and Korean actions

approximately 200 pages of proprietary documentation relating to POSCO's manufacturing process.

The Special Discovery Master assigned to the case issued a Letter Opinion, concluding that Nippon Steel's request to produce those documents to counsel for those foreign proceedings should be granted. The Special Master looked to the Federal Rules of Civil Procedure and the balancing framework for modifying discovery orders set forth by the Third Circuit in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), a case involving the modification of a protective order to disclose a settlement agreement to U.S. newspapers, and not the provision of documents to foreign courts. *See id.* at 775. *Pansy* articulated the standard as follows: "The party seeking to modify the order of confidentiality must come forward with a reason to modify the order. Once that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order." *Id.* at 790.

In conducting his assessment, the Special Master acknowledged that the sole purpose of the request was to facilitate evidence gathering in the foreign proceedings. He concluded that the evidence identified "seems to be relevant" to those proceedings and that restrictions should be put in place to keep the information confidential. Ex. L, at 22. Among the restrictions that the Special Master sought to impose "as a condition to having these documents submitted in a foreign jurisdiction" were that "[b]efore the documents may be submitted to a foreign court, the court must identify the information and agree that it would be maintained as confidential and restricted from third party access." *Id.*

Petitioners filed objections to the Special Master's ruling. On October 30, 2014, the district court entered an Order and Opinion affirming the Special Master's ruling. Petitioners then filed their request for a writ seeking

review under 28 U.S.C. § 1651(a). Our review is appropriate because the order in question turns on claims of confidentiality that raise an important issue of first impression. *See In re United States*, 669 F.3d 1333, 1336 (Fed. Cir. 2012).

Neither the Special Master's ruling nor the district court's order addressed the role that 28 U.S.C. § 1782 or the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), should play in this determination. We asked the parties for supplemental briefing on: "Whether, in light of the Supreme Court's decision in [*Intel*], 28 U.S.C. § 1782 provides the exclusive means for securing documents from another party for use in a foreign proceeding?" *In re POSCO*, No. 2015-112, ECF No. 17, at 1–2 (Fed. Cir. Dec. 22, 2014). Thereafter, we requested the government's views on this issue. The parties and the government have filed responsive briefs.

## II

For mandamus to be available, (1) "the party seeking issuance of the writ must have no other adequate means to attain the relief he desires"; (2) "the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable"; and (3) "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for the D.C.*, 542 U.S. 367, 380–81 (2004) (citations, quotations, and alterations omitted). "[M]andamus may properly be used as a means of immediate appellate review of orders compelling the production of documents claimed to be protected by privilege or other interests in confidentiality." *In re MTSG, Inc.*, 675 F.3d 1337, 1342 (Fed. Cir. 2012) (quoting *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 591 (3d Cir. 1984)); *see also id.* at 1341 ("[M]andamus may be appropriate where a discovery order 'raises a novel and important question of power to

compel discovery, or . . . reflects substantial uncertainty and confusion in the district courts.'" (quoting 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3935.3 (2d ed. 1996)). We think this petition satisfies that standard because it presents an important and unresolved issue.

## III

Section 1782, in relevant part, provides:

> The district court of the district in which a person resides or is found may order him to . . . produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person . . . [and unless otherwise specified] the document or other thing [will be] produced[] in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

POSCO's supplemental brief argues that § 1782, along with certain mutual legal assistance treaties, provides the exclusive means to obtain discovery for use in foreign proceedings. Nippon Steel argues that in the absence of a plain statement of pre-emptive intent, § 1782 does not limit the scope of discovery under the Federal Rules or the standard for modifying protective orders and is not relevant. The government expresses concern that a holding that § 1782 is the exclusive means for obtaining discovery for use in a foreign proceeding would conflict with various statutes, treaties and district court decisions, and the government asserts that § 1782 is not relevant to the district court's authority to permit the use of discovered materials in foreign proceedings.

## IV

The question before us is the role of § 1782(a) in the context of the request to modify this protective order. We

consider this issue against the background of the Supreme Court's decision in *Intel* and district court decisions addressing § 1782.

In *Intel*, the Supreme Court considered the framework under § 1782 for assessing whether to authorize discovery for use in foreign proceedings. It recognized that "comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases," 542 U.S. at 261, and set forth specific factors as "guides for the exercise of district-court discretion," *id.* at 263 n.15, in deciding whether to provide evidence for use in foreign proceedings. *See id.* at 264 ("[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."); *id.* at 262 (referring to "[c]oncerns about maintaining parity among adversaries in litigation"). As the Seventh Circuit has noted, "[t]he section 1782 screen—the judicial inquiry that the statute requires—is designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011).

We agree that § 1782 may not directly govern requests to modify a protective order to make material available in a foreign proceeding—as opposed to direct requests for evidentiary material for use in foreign proceedings pursuant to § 1782. And even as to the latter situation § 1782 is not exclusive since, as the government points out, there are various treaties and alternative mechanisms for securing materials for use in foreign proceedings. But here these other mechanisms appear to be unavailable, and we think that § 1782 still has a role to play when a party seeks to modify a protective order to use previously discovered documents in a foreign proceed-

ing. Other circuit courts have not specifically addressed this issue after *Intel*.[1]

The government argues that "district courts have consistently held that section 1782 does not control the disclosure or use of evidence in domestic litigation." U.S. Amicus Br. at 11. But while the cases state that § 1782 is not controlling, two of the district court opinions cited by the government apply the *Intel* factors.

In *Infineon Technologies AG v. Green Power Technologies Ltd.*, 247 F.R.D. 1 (D.D.C. 2005), the district court granted the defendant's motion to modify a protective order to permit certain discovery in the district court case to be used in a related patent litigation between the parties in Germany. *Id.* at 2. In doing so, however, the

---

[1] Nippon Steel calls our attention to cases before *Intel*, including one from this court, that have not looked to § 1782 in determining whether protective orders should be modified. *See, e.g.*, *In re Jenoptik AG*, 109 F.3d 721 (Fed. Cir. 1997); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992). In *Jenoptik*, we considered whether deposition testimony discovered in U.S. district court subject to a protective order could be submitted to a foreign court in Germany. *See* 109 F.3d at 722. In declining to consider whether the deposition testimony would have been independently discoverable in Germany, we stated that "[c]ase law interpreting the requirements of section 1782 is not relevant to a determination whether a protective order may be modified to permit the release of deposition testimony, already discovered, to another court." *Id.* at 723. But *Jenoptik* (and *Beckman*) issued before *Intel*, which clarified the broad scope of § 1782 and the considerations underlying the statute. And *Beckman* made no mention of § 1782. *See* 966 F.2d at 475–76. Therefore, those cases are not controlling here.

district court cited and applied § 1782, "which governs discovery for foreign tribunals," and found that the *Intel* factors supported the modification of the protective order to allow foreign cross-use. *Id.* at 4–5.

In *INVISTA North America S.à.r.l. v. M & H USA Corp.*, No. 11-1007-SLR-CJB, 2013 WL 1867345 (D. Del. Mar. 28, 2013), although the district court found that the *Intel* factors were not applicable "to the question of whether such documents can be reviewed by an opposing side's foreign attorneys, but *not be used in a foreign legal proceeding*," *id.* at *3 n.4 (emphasis in original), the court applied the *Intel* factors in assessing whether to modify a protective order to allow the plaintiff to use documents in a foreign proceeding, *see id.* at *3–5. POSCO also cites the docket from another case from the District of Delaware, in which the court's oral order denied a request to use documents subject to a protective order in a German proceeding, noting that § 1782 "provide[s] other, appropriate mechanisms for Plaintiff to seek the relief it is requesting." POSCO's Supp. Br. Ex. 1 (dkt. # 64).[2]

Thus, unlike the district court here, which did not address § 1782 or the *Intel* factors, at least three district courts have acknowledged that § 1782 and the *Intel* factors were relevant when a party seeks to modify a protective order to use discovered materials in a pending foreign proceeding.

---

[2] The third case relied on by the government—*Oracle Corp. v. SAP AG*, No. C-07-01658 PJH (EDL), 2010 WL 545842 (N.D. Cal. Feb. 12, 2010)—also recognized the possible relevance of the *Intel* factors. *See id.* at *3 (The *Intel* factors "may arguably be worthy of consideration" in determining whether to modify a protective order to use discovered material in a co-pending foreign proceeding.).

Those factors include: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome . . . ." *Intel*, 542 U.S. at 264–65 (citations omitted). These factors, deemed by Congress to be relevant under § 1782, are not accounted for by the *Pansy* standard, applied here by the district court.

Thus, while § 1782 may not govern instances in which a party seeks to modify a protective order to allow use of discovered materials in a foreign proceeding, we think that the considerations articulated under § 1782 and *Intel* are relevant to that issue and must be considered together with other considerations pertinent under Federal Rule of Civil Procedure 26 as articulated in *Pansy*. Contrary to the concurrence, this is not a situation in which the documents were produced voluntarily, in which case the *Intel* considerations may be irrelevant. In this case, the district court ordered that the confidentiality order be modified and the materials were originally produced to the district court subject to compulsory process.

V

Here, the district court did not address the § 1782 factors, but instead applied the Third Circuit's standard in *Pansy*. The restrictions purportedly imposed by the Special Master on the foreign courts relate to the very "comity and parity concerns," *Intel*, 542 U.S. at 261, addressed by § 1782. Yet the notion of the use of discovery in foreign proceedings was not addressed at all in *Pansy*, and the standard announced there takes no ac-

count of these concerns. *See Pansy*, 23 F.3d at 783–90. We therefore grant mandamus for purposes of directing the district court to conduct the proper assessment giving due consideration to the *Intel* factors.

Accordingly,

POSCO's petition is granted, the order granting the motion to modify the protective order to allow for use of discovery in foreign proceedings is vacated, and the district court is directed to conduct further proceedings consistent with this Order.

FOR THE COURT

July 22, 2015                /s/ Daniel E. O'Toole
      Date                   Daniel E. O'Toole
                             Clerk of Court

# United States Court of Appeals for the Federal Circuit

---

**IN RE: POSCO, POSCO AMERICA CORPORATION,**
*Petitioners*

---

2015-112

---

On Petition for Writ of Mandamus to the United States District Court for the District of New Jersey in No. 2:12-cv-02429-SRC-CLW, Judge Stanley R. Chesler.

---

HUGHES, *Circuit Judge*, concurring.

While the majority concedes that a §1782 action is not the exclusive means by which a party can obtain documents for use in foreign proceedings, it nevertheless concludes that "the considerations articulated under § 1782" and case law applying it must be considered when determining whether to modify a protective order to permit the use of confidential documents in foreign proceedings. But § 1782 does not and was never intended to apply to situations where the party is already in possession of the documents it seeks to use in the foreign proceeding. And forcing such a requirement on the district court runs afoul of the Third Circuit's well-settled test for modifying protective orders.

Nevertheless, to the extent the district court imposed restrictions on the foreign court's use of documents submitted by parties to this litigation, it violates well-settled comity principles. Mandamus is appropriate for that

reason. But I would not go as far as the majority to hold that the district court must consider the *Intel* factors.

## I

I am not persuaded that courts must consider § 1782 outside of the context of an action for the production of documents brought under § 1782. The Supreme Court may have broadened the scope of a § 1782 inquiry in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), but it did not speak to how a party already in possession of documents properly obtained through the usual course of discovery may use those documents. The plain language of § 1782 and its clear legislative history demonstrate that the statute only applies to new discovery—that is, actions where a party is requesting the district court to order the production of a document or otherwise compel testimony.

The plain language of § 1782(a) speaks only to requests for an order to produce documents or testimony, not to voluntary dissemination of legally obtained documents. Section 1782(a) describes "order[ing] [a person] to give his testimony or statement or to produce a document." § 1782(a); *see also id.* ("The order may prescribe the practice and procedure . . . for taking the testimony or statement or producing the document or other thing."); *id.* ("To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."); *id.* ("A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."). Moreover, while § 1782(a) focuses on compelling testimony or document production, § 1782(b) focuses on the voluntary production of documents, expressly providing that § 1782(a) "does not preclude a person . . . from voluntarily . . . producing a

document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him." § 1782(b).

The legislative history confirms that § 1782 was enacted—and further refined—to create a cause of action for enforcing letters rogatory or other international requests for documents or testimony found in the United States. *See Intel Corp.*, 542 U.S. at 247–49 (recounting legislative history of § 1782). But it was not intended to reach the voluntary production of documents. For example, the Senate Report accompanying Congress's 1964 revitalization of § 1782 makes clear that Congress was only concerned with the district court's power to compel discovery in response to foreign requests: "Subsection (a) of proposed revised section 1782 makes clear that U.S. judicial assistance may be sought not only to *compel* testimony and statements but also to *require the production of* documents and other tangible evidence." S. Rep. No. 88-1580 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3788 (emphasis added); Act of Oct. 3, Pub. L. No. 88-619, § 9, 78 Stat. 997; *see also* 1964 U.S.C.C.A.N at 3789 ("A request for judicial assistance under the proposed revision may either be contained in a letter rogatory or other request or be made in a direct application by an interested person . . . .").

The legislative history also confirms that § 1782(b) was intended to carve out situations where a party already in possession of documents may voluntarily provide them to a foreign tribunal:

> Subsection (b) of proposed revised section 1782 reaffirms the pre-existing freedom of persons within the United States voluntarily to give testimony or statements or produce tangible evidence in connection with foreign or international proceedings or investigations. This explicit reaffir-

> mation is considered desirable to stress in the re-
> lations with foreign countries the large degree of
> freedom existing in this area in the United States.
> It also serves to make clear that subsection (a)
> leaves that freedom unaffected.

S. Rep. No. 88-1580 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3790.

Unsurprisingly, the Supreme Court's decision in *Intel* reflects the plain language of the statute and its clear legislative history. There, the Supreme Court described § 1782 in terms of an affirmative action ordering the production of documents or other evidence. *Intel Corp.*, 542 U.S. at 260 (focusing on the district court's "production-order authority"); *id.* at 264 ("[W]hen the person from whom discovery is sought . . . ."); *id.* at 246 ("This case concerns the authority of federal district courts to assist in the production of evidence for use in a foreign or international tribunal."); *id.* at 247 ("Section 1782 is the product of congressional efforts . . . to provide federal-court assistance in gathering evidence for use in foreign tribunals"); *id.* at 261 ("[N]othing in the text of § 1782 limits a district court's production-order authority . . . .").

On a more fundamental level, forcing a § 1782 analysis into protective-order disputes is unnecessary. In *In re Jenoptik AG*, 109 F.3d 721 (Fed. Cir. 1997), we recognized that the protective-order inquiry is fundamentally different from the § 1782 inquiry. There, while interpreting Ninth Circuit law, we emphasized that the protective-order inquiry is focused on the confidential nature of the documents subject to the protective order, not on their use in a foreign proceeding. *Id.* at 723. In this case, just as in *Jenoptik*, "[POSCO] d[oes] not argue that, if these materials were not confidential [Nippon] could not present the [evidence] to another court." *Id.* Nor could POSCO make such an argument because § 1782(b) and the legislative

history make it abundantly clear that a party may voluntarily disclose evidence to a foreign tribunal. Thus, we categorically held in *Jenoptik*—without reference or citation to any regional circuit law—that "[c]ase law interpreting the requirements of section 1782 is not relevant to a determination whether a protective order may be modified to permit the release of [evidence], already discovered, to another court." *Id.* at 723.

While we may not be strictly bound by *Jenoptik* in this case because we are interpreting Third Circuit law, our reasoning in *Jenoptik* must carry some force. Indeed, other courts not strictly bound by our precedent have applied *Jenoptik* to conclude that § 1782 does not override the protective-order inquiry. *See, e.g.*, *INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, Civ. No. 1:11-cv-1007-SLR, 2013 WL 1867345, at *1, *3 (D. Del. Mar. 28, 2013) (noting "some courts have refused to apply the Section 1782(a) factors" in protective order modifications) (citing *Jenoptik*, 109 F.3d at 723); *Infineon Techs. AG v. Green Power Techs. Ltd.*, 247 F.R.D. 1, 4 (D.D.C. 2005) (citing *Jenoptik* for the proposition that § 1782 does not control modifications to protective orders, but finding that § 1782 considerations are nonetheless helpful to such an inquiry); *see also Oracle Corp. v. SAP AG*, Civ. No. 4:07-cv-01658-PJH, 2010 WL 545842, at *2 (N.D. Cal. Feb. 12, 2010) ("[Section 1782] applies to court orders for new discovery to be conducted exclusively for use in a foreign proceeding separate from any litigation pending before the United States court; it does not govern the discretion of a court to modify a protective order to allow access to information already obtained in the regular course of discovery in a case pending before it.") (citing *Jenoptik*, 109 F.3d at 723). Likewise, courts and commentators have interpreted modifications to protective orders for the purposes of using documents abroad consistent with our holding in *Jenoptik*. For instance, in *In re Kolon Industries Inc.*, 479

F. App'x 483, 486 (4th Cir. 2012), the court affirmed a modification of a protective order to permit release of already-produced privileged documents for use in foreign litigation without any discussion of § 1782. And recent commentators have noted that § 1782 only applies to new discovery: "Where the requested discovery is sought by foreign persons from discovery already made as part of ongoing U.S. litigation, § 1782 need not be satisfied." 3 Ved. P. Nanda & David K. Pansius, *Litigation of International Disputes in U.S. Courts* § 17:46 (2014).[1]

In sum, I am not persuaded that § 1782 must be applied outside of the narrow context of an action for the production of evidence for use abroad. To the extent we are not bound by our holding in *Jenoptik*, I find its reasoning persuasive in light of the plain language and clear legislative history of § 1782.

## II

Requiring a court to resort to the *Intel* factors when it has reason to believe the documents will be used in a foreign proceeding also contradicts Third Circuit prece-

---

[1] For the reasons discussed above and contrary to the majority's suggestion, Maj. Op. at 6 n.1, *Intel* does not overrule or otherwise undermine our reasoning in *Jenoptik*. *Cf. Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014) (circuit precedent can be effectively overruled by Supreme Court decisions that "'undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.'" (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc))). At best, *Intel* broadened the scope of a § 1782 cause of action, but it does not reach a situation such as this where the party is already in possession of the documents it seeks to use in a foreign proceeding. *See supra* pp. 2–4.

dent. The Third Circuit has laid out a flexible two-part test for determining whether a protective order can be modified. First, "[t]he party seeking to modify the order of confidentiality must come forward with a reason to modify the order." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994). "[O]nce that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order." *Id.* In addition to reliance, the relevant factors include whether disclosure will violate any privacy interest, the information is sought for a legitimate purpose, and sharing the information will promote fairness and efficiency. *Id.* at 787–91. In *Pansy,* the Third Circuit stressed the flexibility of the test, noting that the factors discussed are "unavoidably vague and are of course not exhaustive," while explaining that "such a balancing test is necessary to provide the district courts the flexibility needed to justly and properly consider the factors in each case." *Id.* at 789.

The majority's holding that § 1782 must apply to the protective-order inquiry, and that the court must apply the *Intel* factors, runs counter to that Third Circuit precedent. *Compare* Maj. Op. at 8 ("These [*Intel*] factors, deemed by Congress to be relevant under § 1782, are not accounted for by the *Pansy* standard."), *with Pansy*, 23 F.3d at 789 (stressing the need for a flexible balancing test while emphasizing that "[t]he factors discussed above are unavoidably vague and are of course not exhaustive.") *and Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (noting *Pansy* factors "are neither mandatory nor exhaustive").

## III

While § 1782 was not designed for such cases, I nevertheless agree with the majority that modifying protective

orders to permit the use of previously discovered material in foreign proceedings—like all domestic court orders potentially impinging on a foreign court's sovereignty—may raise some of the same comity concerns identified by the Supreme Court in *Intel*. But this is not unique to the protective-order inquiry: any time a court imposes restrictions on a foreign court, it should be aware of such concerns. Indeed, the Third Circuit has recognized that "[c]omity is essentially a version of the golden rule: a 'concept of doing to others as you would have them do to you.'" *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 75 (3d Cir. 1994) (quoting *Lafontant v. Aristide,* 844 F. Supp. 128, 132 (S.D.N.Y. 1994)). "Thus, it may be permissible to prescribe and enforce rules of law in a foreign country, but unreasonable to do so in a particular manner because of the intrusiveness of a particular type of [order]." *Id.*

In this case, as one of seven conditions "to having these documents submitted in a foreign jurisdiction," the district court included a requirement that the foreign court "must identify the [confidential] information and agree that it would be maintained as confidential and restricted from third party access" before the court may receive those documents. Ex. L, at 22. The district court found that "with the condition that the [seven] actions . . . will be taken," "good cause" exists to modify the protective order to permit the use of certain documents abroad. *Id.* at 23; *see also* Ex. P, at 4. While a court may exercise its discretion to restrict the *parties'* use of documents subject to a protective order in accordance with Federal Rule of Civil Procedure 26, the court may not go so far as to place direct limits on a foreign court's power to exercise its own discretion. *See Republic of Philippines*, 43 F.3d at 79 ("Although countries sometimes exercise jurisdiction to prescribe and enforce laws that reach extraterritorial conduct, it is nevertheless widely accepted that each sovereign nation has the sole jurisdiction to prescribe and

administer its own laws, in its own country, pertaining to its own citizens, in its *own* discretion."); *cf. Jenoptik*, 109 F.3d at 723–24 (noting that the "district court did all that it could by *requesting* that the [foreign] court continue to treat the documents as confidential" (emphasis added)). Thus, to the extent the district court imposed such a restriction on a foreign court's ability to use documents as that court pleases without due consideration to international comity concerns, it erred.

On remand, I would order the district court to determine whether "good cause" exists to modify the protective order independent of a restriction on the foreign court's discretion. I also would instruct the court to be mindful that the deliberately flexible *Pansy* test permits, but does not require, district courts to account for relevant comity concerns, if appropriate. *See, e.g., INVISTA N. Am. S.a.r.l.*, 2013 WL 1867345, at *3 (recognizing that "some courts have refused to apply the Section 1782(a) factors" in evaluating requests for protective order modification, but finding "even were the Court to assess the four *Intel* factors . . . , those factors would not counsel against permitting the use of the . . . documents at issue."). But I would not hold—as the majority does here—that the district court must apply § 1782 and its case law.