HUGHES, Circuit Judge,
concurring.
While the majority concedes that a § 1782 action is not the exclusive means by which a party can obtain documents for use in foreign proceedings, it nevertheless concludes that “the. considerations articulated under § 1782” and case law applying it must be considered when determining whether to modify a protective order to permit the use of confidential documents in foreign proceedings. But § 1782 does not and was never intended to apply to situations where the party is already in possession of the documents it seeks to use in the foreign proceeding. And forcing such a requirement on the district court runs afoul of the Third Circuit’s well-settled test for modifying protective orders.
Nevertheless, to the extent the district court imposed restrictions on the foreign court’s use of documents submitted by parties to this litigation, it violates well-settled comity principles. Mandamus is appropriate for that reason. But I would not go as far as the majority to hold that the district court must consider the Intel factors.
*1378 I
I am not persuaded that courts must consider § 1782 outside of the context of an action for the production of documents brought under § 1782. The Supreme Court may have broadened the scope of a § 1782 inquiry in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004), but it did not speak to how a party already in possession of documents properly obtained through the usual course of discovery may use those documents. The plain language of § 1782 and its clear legislative history demonstrate that the statute only applies to new discovery — that is, actions where a party is requesting the district court to order the production of a document or otherwise compel testimony.
The plain language of § 1782(a) speaks only to requests for an order to produce documents or testimony, not to voluntary dissemination of legally obtained documents. Section 1782(a) describes “ordering] [a person] to give his testimony or statement or to produce a document.” § 1782(a); see also id. (“The order may prescribe the practice and procedure ... for taking the testimony or statement or producing the document or other thing.”); id. (“To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.”); id. (“A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.”). Moreover, while § 1782(a) focuses on compelling testimony or document production, § 1782(b) focuses on the voluntary production of documents,- expressly providing that § 1782(a) “does not preclude a person ... from voluntarily ... producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.” § 1782(b).
The legislative history confirms that § 1782 was enacted — and further refined — to create a cause of action for enforcing letters rogatory or other international requests for documents or testimony found in the United States. See Intel Corp., 542 U.S. at 247-49, 124 S.Ct. 2466 (recounting legislative history of § 1782). But it was not intended to reach the voluntary production of documents. For example, the Senate Report accompanying Congress’s 1964 revitalization of § 1782 makes clear that Congress was only concerned with the district court’s power to compel discovery in response to foreign requests: “Subsection (a) of proposed revised section 1782 makes clear that U.S. judicial assistance may be sought not only to compel testimony and statements but also to require the production of documents and other tangible evidence.” S.Rep. No. 881580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3788 (emphasis added); Act of Oct. 3, Pub.L. No. 88-619, § 9, 78 Stat. 997; see also 1964 U.S.C.C.A.N. at 3789 (“A request for judicial assistance under the proposed revision may either be contained in a letter rogatory or other request or be made in a direct application by an interested person.... ”).
The legislative history also confirms that § 1782(b) was intended to carve out situations where a party already in possession of documents may voluntarily provide them to a foreign tribunal:
Subsection (b) of proposed revised section 1782 reaffirms the pre-existing freedom of persons within the United States voluntarily to give testimony or statements or produce tangible evidence in connection with foreign or international proceedings or investigations. This explicit reaffirmation is considered desirable to stress in the relations with *1379 foreign countries the large degree of freedom existing in this area in the United States. It also serves to make clear that subsection (a) leaves that freedom unaffected.
S.Rep. No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3790.
Unsurprisingly, the Supreme Court’s decision in Intel reflects the plain language of the statute and its clear legislative history. There, the Supreme Court described § 1782 in terms of an affirmative action ordering the production of documents or other evidence. Intel Corp., 542 U.S. at 260, 124 S.Ct. 2466 (focusing on the district court’s “production-order authority”); id. at 264, 124 S.Ct. 2466 (“[W]hen the person from whom discovery is sought....”); id. at 246, 124 S.Ct. 2466 (“This case concerns the authority of federal district courts to assist in the production of evidence for use in a foreign or international tribunal.”); id. at 247, 124 S.Ct. 2466 (“Section 1782 is the product of congressional efforts ... to provide federal-court assistance in gathering evidence for use in foreign tribunals”); id. at 261, 124 S.Ct. 2466 (“[Nothing in the text of § 1782 limits a district court’s production-order authority....”).
On a more fundamental level, forcing a § 1782 analysis into protective-order disputes is unnecessary. In In re Jenoptik AG, 109 F.3d 721 (Fed.Cir.1997), we recognized that the protective-order inquiry is fundamentally different from the § 1782 inquiry. There, while interpreting Ninth Circuit law, we emphasized that the protective-order inquiry is focused on the confidential nature of the documents subject to the protective order, not on their use in a foreign proceeding. Id. at 723. In this case, just as in Jenoptik, “[POSCO] d[oes] not argue that, if these materials were not confidential [Nippon] could not present the [evidence] to another court.” Id. Nor could POSCO make such an argument because § 1782(b) and the legislative history make it abundantly clear that a party may voluntarily disclose evidence to a foreign tribunal. Thus, we categorically held in Jenoptik — without reference or citation to any regional circuit law — that “[c]ase law interpreting the requirements of section 1782 is not relevant to a determination whether a protective order may be modified to permit the release of [evidence], already discovered, to another court.” Id. at 723.
While we may not be strictly bound by Jenoptik in this case because we are interpreting Third Circuit law, our reasoning in Jenoptik must carry some force. Indeed, other courts not strictly bound by our precedent have applied Jenoptik to conclude that § 1782 does not override the protective-order inquiry. See, e.g., INVISTA N. Am. S.a.r.l. v. M & G USA Corp., Civ. No. 1:11-cv-1007-SLR, 2013 WL 1867345, at *1, *3 (D.Del. Mar. 28, 2013) (noting “some courts have refused to apply the Section 1782(a) factors” in protective order modifications) (citing Jenoptik, 109 F.3d at 723); Infineon Techs. AG v. Green Power Techs. Ltd., 247 F.R.D. 1, 4 (D.D.C.2005) (citing Jenoptik for the proposition that § 1782 does not control modifications to protective orders, but finding that § 1782 considerations are nonetheless helpful to such an inquiry); see also Oracle Corp. v. SAP AG, Civ. No. 4:07-cv-01658-PJH, 2010 WL 545842, at *2 (N.D.Cal. Feb. 12, 2010) (“[Section 1782] applies to court orders for new discovery to be conducted exclusively for use in a foreign proceeding separate from any litigation pending before the United States court; it does not govern the discretion of a court to modify a protective order to allow access to information already obtained in the regular course of discovery in a case pending before it.”) (citing Jenoptik, 109 F.3d at 723). Likewise, courts and commentators have interpreted modifications to protective orders for the purposes of using docu *1380 ments abroad consistent with our holding in Jenoptik. For instance, in In re Kolon Industries Inc., 479 Fed.Appx. 483, 486 (4th Cir.2012), the court affirmed a modification of a protective order to permit release of already-produced privileged documents for use in foreign litigation without any discussion of § 1782. And recent commentators have noted that § 1782 only applies to new discovery: “Where the requested discovery is sought by foreign persons from discovery already made as part of ongoing U.S. litigation, § 1782 need not be satisfied.” 3 Ved. P. Nanda & David K. Pansius, Litigation of International Disputes in U.S. Courts § 17:46 (2014).[1]
In sum, I am not persuaded that § 1782 must be applied outside of the narrow context of an action for the production of evidence for use abroad. To the extent we are not bound by our holding in Jenoptik, I find its reasoning persuasive in light of the plain language and clear legislative history of § 1782.
II
Requiring a court to resort to the Intel factors when it has reason to believe the documents will be used in a foreign proceeding also contradicts Third Circuit precedent. The Third Circuit has laid out a flexible two-part test for determining whether a protective order can be modified. First, “[t]he party seeking to modify the order of confidentiality must come forward with a reason to modify the order.” Pansy v. Borough of Stroudsburg, 23 F.3d 772, 790 (3d Cir.1994). “[Ojnce that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order.” Id. In addition to reliance, the relevant factors include whether disclosure will violate any privacy interest, the information is sought for a legitimate purpose, and sharing the information will promote fairness and efficiency. Id. at 787-91. In Pansy, the Third Circuit stressed the flexibility of the test, noting that the factors discussed are “unavoidably vague and are of course not exhaustive,” while explaining that “such a balancing test is necessary to provide the district courts the flexibility needed to justly and properly consider the factors in each ease.” Id. at 789.
The majority’s holding that § 1782 must apply to the protective-order inquiry, and that the court must apply the Intel factors, runs counter to that Third Circuit precedent. Compare Maj. Op. at 1376 (“These [Intel ] factors, deemed by Congress to be relevant under § 1782, are not accounted for by the Pansy standard.”), with Pansy, 23 F.3d at 789 (stressing the need for a flexible balancing test while emphasizing that “[t]he factors discussed above are unavoidably vague and are of course not exhaustive.”) and Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir.1995) (noting Pansy factors “are neither mandatory nor exhaustive”).
Ill
While § 1782 was not designed for such eases, I nevertheless agree with the majority that modifying protective orders to permit the use of previously discovered *1381 material in foreign proceedings — like all domestic court orders potentially impinging on a foreign court’s sovereignty — may raise some of the same comity concerns identified by the Supreme Court in Intel. But this is not unique to the protective-order inquiry: any time a court imposes restrictions on a foreign court, it should be aware of such concerns. Indeed, the Third Circuit has recognized that “[c]omity is essentially a version of the golden rule: a ‘concept of doing to others as you would have them do to you.’ ” Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 75 (3d Cir.1994) (quoting Lafontant v. Aristide, 844 F.Supp. 128, 132 (S.D.N.Y.1994)). “Thus, it may be permissible to prescribe and enforce rules of law in a foreign country, but unreasonable to do so in a particular manner because of the intrusiveness of a particular type of [order].” Id.
In this case, as one of seven conditions “to having these documents submitted in a foreign jurisdiction,” the district court in-' eluded a requirement that the foreign court “must identify the [confidential] information and agree that it would be maintained as confidential and restricted from third party access” before the court may receive those documents. Ex. L, at 22. The district court found that “with the condition that the [seven] actions ... will be taken,” “good cause” exists to modify the protective order to permit the use of certain documents abroad. Id. at 23; see also Ex. P, at 4. While a court may exercise its discretion to restrict the parties’ use of documents subject to a protective order in accordance with Federal Rule of Civil Procedure 26, the court may not go so far as to place direct limits on a foreign court’s power to exercise its own discre tion. See Republic of Philippines, 43 F.3d at 79 ( Although countries sometimes exercise jurisdiction to prescribe and enforce laws that reach extraterritorial conduct, it is nevertheless widely accepted that each sovereign nation has the sole jurisdiction to prescribe and administer its own laws, in its own country, pertaining to its own citizens, in its own discretion.”); cf. Jenoptik, 109 F.3d at 723-24 (noting that the “district court did all that it could by requesting that the [foreign] court continue to treat the documents as confidential” (emphasis added)). Thus, to the extent the district court imposed such a restriction on a foreign court’s ability to use documents as that court pleases without due consideration to international comity concerns, it erred.
On remand, I would order the district court to determine whether “good cause” exists to modify the protective order independent of a restriction on the foreign court’s discretion. I also would instruct the court to be mindful that the deliberately flexible Pa/nsy test permits, but does not require, district courts to account for relevant comity concerns, if appropriate. See, e.g., INVISTA N. Am. S.a.r.l., 2013 WL 1867345, at *3 (recognizing that “some courts have refused to apply the Section 1782(a) factors” in evaluating requests for protective order modification, but finding “even were the Court to assess the four Intel factors ..., those factors would not counsel against permitting the use of the ... documents at issue.”). But I would not hold — as the majority does here — that the district court must apply § 1782 and its case law.

. For the reasons discussed above and contrary to the majority's suggestion, Maj. Op. at 1376 n. 1, Intel does not overrule or otherwise undermine our reasoning in Jenoptik. Cf. Troy v. Samson Mfg. Corp., 758 F.3d 1322, 1326 (Fed.Cir.2014) (circuit precedent can be effectively overruled by Supreme Court decisions that " 'undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.’ " (quoting Miller v. Gammie, 335 F.3d 889, 900 (9th Cir.2003) (en banc))). At best, Intel broadened the scope of a § 1782 cause of action, but it does not reach a situation such as this where the party is already in possession of the documents it seeks to use in a foreign proceeding. See supra pp. 1373-74.